COMMONWEALTH vs. CHARLES ASCOLILLO.

Middlesex.  May 2, 1989. — August 1, 1989.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Challenge to jurors, Instructions to jury. *Jury and Jurors. Rape. Evidence,* Relevancy and materiality.

The judge at a criminal trial properly refused to excuse a prospective juror, a police officer, for cause, in circumstances where there was no showing that the juror was not impartial. [458-461]

At a criminal trial in which the victim testified she was assaulted by the defendant with a small knife with a skinny blade there was no error in the admission of seven small pocket knives found in the defendant's house on a shelf near the sofa bed where the alleged crimes were committed. [461-462]

At a rape trial the judge correctly refused to instruct the jury that the Commonwealth was required to prove beyond a reasonable doubt that the defendant did not reasonably and in good faith believe that the victim consented. [462-463]

There was no risk of a miscarriage of justice in a rape case by reason of the judge's proper instructions to the jury to consider the victim's intoxication in assessing her ability to consent. [463-464]

INDICTMENTS found and returned in the Superior Court Department on February 28, 1986.

The cases were tried before *James D. McDaniel, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

*Michael Fabbri,* Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. The defendant, Charles Ascolillo, appeals from his convictions of rape, kidnapping, and assault and battery by means of a dangerous weapon of a twenty-four year old woman. We transferred the case to this court on our own motion. We affirm the judgments of conviction below.

The victim in this case testified that, on the evening of October 10, 1985, she went to two restaurants in Billerica and a party in Chelmsford, and had a total of three alcoholic beverages. She arrived at the defendant's home in Billerica about 5 A.M. on October 11, and found the defendant, the defendant's wife, and the defendant's brother drinking and smoking cocaine. She had known the defendant and his wife for twelve years and considered them friends. She sat with them, playing cards, and watching television. During this time, the victim and the defendant drank vodka and cranberry juice. The victim also snorted a small amount of cocaine. About 7:30 A.M., the defendant's sister arrived at the house. At some point that morning, the defendant's brother and sister went to bed. The defendant's wife left to go to work about 11 A.M.

The defendant then asked the victim if she "wanted to do a line of coke." The victim responded that she did. She followed the defendant into a room in the back of the house. When she entered the room, the defendant was sitting on an opened sofa bed, wearing a T-shirt and underwear. After they talked and "did a line of coke," he grabbed her from behind and pulled her onto the bed. They struggled. She was crying, screaming, and trying to get away. The defendant pinned her to the bed, with his knees on top of her arms on either side of her head. According to the victim the defendant sought to force her to submit to sodomy. She resisted. He threatened to kill her if she was not quiet. He ripped the buttons off her blouse, grabbed a knife from a cabinet next to the sofa bed, and put it near her neck and then her eye. When she pushed the knife away, she cut her index finger. He told her to "blow him" or he would cut her. She vomited. He again tried to force her to submit. She turned her head, however, and he ejaculated on the side of her face. He then put his penis in her mouth. She hit him with a glass and struggled with him. He told her he would kill her if she told anyone. When she left the defendant's house, it was about 2 P.M.

Other evidence was submitted which corroborated the victim's testimony. Included in this corroborative evidence was the testimony of Inspector Richard Howe of the Billerica police

department. He testified that, on the same day, he observed the victim's blouse and jacket, and a small tear in the blouse's left underarm. Howe testified that the victim had scratch marks on the left and right sides of her neck, and that her finger was cut. Howe also testified as a fresh complaint witness that the victim told him the defendant had raped her.

Howe further testified that he conducted a search of the defendant's home and arrested the defendant. The police seized drug paraphernalia which laboratory tests showed to have cocaine residue on them, a blood-stained sheet from the sofa bed, a blood-stained pillow case from the sofa bed, and seven assorted small pocket knives located in the shelf area to the side of the sofa bed.

The defendant testified in his own defense that he and the victim had engaged in consensual oral sex. He testified that they had had consensual sexual intercourse on numerous prior occasions, and that he provided her with cocaine in exchange for sexual favors. He testified that, at some point on October 11, he refused to give the victim any more cocaine and that she "flipped out," yelling, screaming, and tearing the house apart. He thought she was having a seizure from a cocaine overdose. He testified that she said before she left, "I'll get you for this."

The defendant raises three issues on appeal: (1) the judge's denial of the defendant's challenge for cause of a juror who was a police officer; (2) the admission in evidence of seven small knives found at the defendant's house; and (3) the judge's instructions to the jury concerning the victim's consent.

1. *Selection of the Jury.*

During the course of jury empanelment, one prospective juror came forward in response to questioning of the venire.

THE JUDGE: "Okay. . . . [W]hat did you raise your hand to, please?"

THE JUROR: "I'm a police officer, and I have been for 26 years, and also was a victim of an assault and battery."

THE JUDGE: "Outside of your police duties?"

THE JUROR: "No, on my duties."

THE JUDGE: "Oh, on your duties. Yes. Well, let's see. You're a police office where? In Melrose?"

THE JUROR: "Melrose."

THE JUDGE: "Well, is the experience you had, either one of those experiences, does [that] affect your ability to be fair and impartial trying this case?"

THE JUROR: "I don't think it would, but somebody else might."

THE JUDGE: "Well, it's — whether they think it is or not is not the point. The point is whether you think — "

THE JUROR: "No, I don't think so."

THE JUDGE: "All right. I find the juror stands indifferent. Thank you. You may be seated."

Defense counsel objected, saying, "I would ask this juror be excused for cause. I note . . . the juror questionnaire . . . indicates essentially what he told the court, that he is presently working as a police sergeant for the City of Melrose since 1961, and that he was further a government witness in numerous criminal cases. . . . [H]e's still actively involved in law enforcement in Middlesex County . . . ." The judge stated that his appearances in court as a witness were the nature of his job and refused to excuse him for cause.

Defense counsel subsequently renewed his challenge to this juror saying, "Your honor, . . . I'd ask the court again to reconsider excusing [the juror] for cause." The judge denied the request. The defendant peremptorily challenged the juror. Later, having exhausted his peremptory challenges, the defendant requested an additional peremptory challenge. The request was denied.

The defendant argues on appeal that this prospective juror should have been excused for cause. We have stated that: " 'The defendant undertakes a heavy burden in attempting to persuade an appellate court that there was error in a denial of a challenge for cause.' *United States* v. *Gullion*, 575 F.2d 26, 29 (1st Cir. 1978). . . . 'If the trial judge, who conducted the voir dire . . . , believed that he [or she] had impanelled a jury of twelve open-minded, impartial persons, then we will set aside his [or her] action only where juror prejudice is manifest.'

*United States* v. *McNeill*, 728 F.2d 5, 9 (1st Cir. 1984)."
*Commonwealth* v. *Lattimore*, 396 Mass. 446, 449 (1985),
S.C., 400 Mass. 1001 (1987). A trial judge's initial determi-
nation that a juror stands indifferent will not be disturbed on
appeal unless the defendant demonstrates that there was a sub-
stantial risk that the case would be decided in whole or in part
on the basis of extraneous issues. *Id.*

The defendant argues that the prospective juror's characteris-
tics — a police officer in Melrose, a city in Middlesex County,
who had on numerous prior occasions been a witness in criminal
cases — demonstrate the profound unfairness in the notion
that he could sit as a juror in the case at bar.[1] We disagree.
See *Commonwealth* v. *Lattimore, supra* (that juror saw brother-
in-law, a retired police officer, on a daily basis insufficient to
establish partiality and insufficient to support challenge for
cause); *Commonwealth* v. *Coleman*, 389 Mass. 667, 675
(1983) (judge properly found indifferent juror who had been
summer police officer who stated that this would not affect
his impartiality); *Commonwealth* v. *Wilborne*, 382 Mass. 241,
254 (1981) (judge found indifferent two jurors — a special
police officer for a private corporation and a voluntary auxi-
liary defense police officer — who stated that their police
associations would not affect their consideration of the evi-
dence); *Commonwealth* v. *Amazeen*, 375 Mass. 73, 83 (1978)
(judge found indifferent a prospective juror who knew prose-
cutor, was a member of the same church parish, went to the
same high school, and stated that connections would not affect
his impartiality). See also G. L. c. 234A, § 3 (1988 ed.) ("No
person shall be . . . excluded from serving as . . . a juror
because of . . . [his or her] occupation"). We decline to adopt
a rule that the mere fact that a prospective juror is a police

---

[1] The defendant's heavy reliance on *Commonwealth* v. *Susi*, 394 Mass.
784 (1985), is misplaced. In *Susi*, we held that a judge improperly denied
a defendant's challenge for cause of a blind juror in a case where viewing
and visually comparing the physical evidence was significant, and the issue
of identification was a predominant issue at trial. *Id.* at 788. *Susi* is not
helpful in deciding the case before us, because the defendant alleges bias
rather than physical incapacity to sit as juror.

officer, in the absence of a showing of prejudice or partiality, or connection with the particular facts involved at trial, would form the basis to sustain a challenge for cause.

We conclude that the judge acted properly, within his discretion, in refusing to excuse the juror for cause. "Where, as here, the judge who had the opportunity to observe the prospective juror, makes a determination that the juror is indifferent after exploring the grounds for a possible claim that the juror was not impartial, we cannot conclude, in the absence of any affirmative evidence to the contrary, that the judge abused his discretion."[2] *Commonwealth* v. *Amazeen, supra.*

2. *Admission in Evidence of Weapons Found in the Defendant's House.*

The defendant argues that it was reversible error for the judge to admit in evidence seven small pocket knives seized from the defendant's house. There was evidence that all of the knives were found near the sofa bed where the alleged crimes were committed. Nevertheless, the defendant argues that at least six of the knives had no relevance to the case.

"The fact that, at or about the time of a crime, a defendant had a weapon that could have been used in committing the crime is admissible in the judge's discretion." *Commonwealth* v. *Toro*, 395 Mass. 354, 356 (1985). "[I]t is commonly competent to show the possession by a defendant of an instrument capable of being used in the commission of the crime, without direct proof that that particular instrument was in fact the one used." *Commonwealth* v. *O'Toole*, 326 Mass. 35, 39 (1950). See *Commonwealth* v. *Jackson*, 388 Mass. 98, 104 (1983) (two .22 caliber guns in defendant's possession admissible where .22 caliber shells found in victim's apartment and automobile); *Commonwealth* v. *Bartolini*, 299 Mass. 503, 512, cert. denied, 304 U.S. 565 (1938) (possession, and familiarity with the use, of knives falls short of proving guilt but has "some legitimate probative value" in connection with other evidence).

---

[2] The defendant asserts no claim that the jury which sat on his case were not impartial or that he did not receive a fair trial.

In *Commonwealth* v. *Toro*, *supra*, we held that it was error, albeit not prejudicial, to admit in evidence weapons and ammunition the defendant possessed, none of which could have been the murder weapon. *Id*. at 357-358. In *Toro*, the judge improperly admitted two .32 caliber revolvers, a basket weave holder for a .45 caliber clip, and numerous rounds of ammunition for other than .38 caliber weapons despite the fact that the victim was killed by a bullet from a .38 caliber weapon. *Id*. at 355. In this case, however, the seven knives admitted in evidence could each have been used in the crimes charged. The victim, in her testimony, described the knife as small enough to fit in the defendant's hand, and said that it had a sharp, skinny blade but that she could not see its handle. The victim was unable to identify any one of the seven knives as the one used in the rape, assault and battery, and kidnapping. Viewing the knives seized, the judge stated that all of the knives "certainly fall within the range of the knives that would be consistent with [the victim's testimony] . . . . They're little knives that can be held in your hand, and your hand would cover the [handle] if you held it . . . ."

We conclude that the admission in evidence of the seven knives found in the defendant's house, on a shelf near his sofa bed, was not error. The judge, within his discretion, was warranted in ruling that, in the totality of the circumstances, the seven knives were sufficiently relevant and, therefore, admissible.

### 3. *The Judge's Charge.*

Defense counsel makes two arguments on appeal, first that the judge erred by not giving one of the defendant's requested instructions, and second, that the judge improperly instructed the jury to consider the victim's intoxication in assessing her ability to consent. In the course of his final instructions to the jury, the judge instructed the jury on the elements of rape as well as the victim's lack of consent. He told the jury to ask whether the victim's actions were "the actions of a person who consented to intercourse or the actions of a person who did not consent to sexual relations but was raped? Therefore, if there is some intervening restraint due to fear, intoxication, or

other cause, there can be no consent." The judge stated further: "I might also say there was some evidence in this case as to the degree of intoxication that might have been suffered by [the victim]. There was some question of how much dope or cocaine had been ingested and or alcohol; and in that connection . . . I instruct you further, that where a man has sexual intercourse with a woman while she is, as he knows, wholly insensible so as to be unable [to] consent[ ] and with such force as is necessary to accomplish the purpose, [that] is rape, so in this case on the issue of consent, you may consider what state of intoxication, if any, [the victim] was in at the time of the incident alleged in this case."

After the judge instructed the jury, defense counsel asked the judge to consider giving an instruction he had requested, that the defendant would not be guilty of rape if the jury had "reasonable doubt whether [the] defendant reasonably and in good faith believed [the victim] voluntarily consented to engage in sexual intercourse." This requested instruction is taken from *Commonwealth* v. *Cordeiro*, 401 Mass. 843, 849-850 (1988). We stated there that such an instruction went beyond the requirements of *Commonwealth* v. *Sherry*, 386 Mass. 682 (1982) (Commonwealth not required to prove either that the defendant intended sexual intercourse without the victim's consent or that he had actual knowledge of the victim's lack of consent).

We conclude that the judge properly refused to instruct the jury, as defense counsel requested, that the defendant was not guilty of rape if he had a reasonable and good faith belief that the victim consented. We have never suggested that, "in order to establish the crime of rape the Commonwealth must prove in every case not only that the defendant intended intercourse but also that he did not act pursuant to an honest and reasonable belief that the victim consented." *Commonwealth* v. *Grant*, 391 Mass. 645, 651 (1984). We decline to adopt such a rule.

The defendant also challenges the judge's instructions to the jury to consider the victim's intoxication in assessing her ability to consent. Appellate counsel argues that the defendant preserved his rights on this issue. He contends that trial counsel

made clear his objections to the judge's instruction during a bench conference. The record does not support the defendant's claim. Defense counsel's statements focused on his requested instruction and did not constitute an objection to the portion of the jury instructions the defendant now challenges. See *Commonwealth* v. *McDuffee*, 379 Mass. 353, 357 (1979) (defendant must bring alleged error in charge to judge's attention in specific terms in order to give judge opportunity to rectify any error). Thus, we review the record to determine whether there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

The judge's instruction concerning the victim's intoxication was drawn from language in *Commonwealth* v. *Burke*, 105 Mass. 376, 380-381 (1870). The defendant argues that it was wholly inapplicable in this case and was not warranted by any view of the evidence. We disagree. The defendant's own testimony suggested that the victim may have been so intoxicated by drugs and alcohol as to be incapable of consenting. The defendant testified that the victim had been drinking alcohol and snorting cocaine "prior to the sexual act," and that he later refused to give her more cocaine because "she had had too much." He thought, "[j]ust looking at her eyes," that "she looked pretty high." According to the defendant's testimony, he thought the victim had a seizure from a cocaine overdose and tore the house apart. See *Commonwealth* v. *Helfant*, 398 Mass. 214, 217, 221 (1986) (complainant incapable of consent after she was injected with Valium, was in a stupor, "in a fog," and felt as if she had "about ten drinks"); *Commonwealth* v. *Burke*, *supra* at 381 (woman in state of "utter stupefaction" caused by drunkenness or sudden disease). Cf. *Commonwealth* v. *Goldenberg*, 338 Mass. 377, 383, cert. denied, 359 U.S. 1001 (1959) (not a case where woman is "incapable of consent by reason of stupefaction, unconsciousness or helplessness"). There was no risk of a miscarriage of justice.

*Judgments affirmed.*