COMMONWEALTH *vs.* STEPHEN R. GASSETT.

No. 90-P-548.

Middlesex. October 16, 1990. - January 31, 1991.

Present: ARMSTRONG, KAPLAN, & GILLERMAN, JJ.

*Assault with Intent to Rape. Practice, Criminal,* Instructions to jury, Lesser included offense.

Evidence presented at a criminal trial provided no rational basis for an acquittal on the charge of assault with intent to commit rape and a conviction on the lesser charge of assault, nor was an instruction to the jury concerning specific intent required which was unsupported by the evidence. [59-61]

INDICTMENT found and returned in the Superior Court Department on October 28, 1987.

The case was tried before *James D. McDaniel, Jr.*, J.

*Peter M. Onek*, Committee for Public Counsel Services, for the defendant.

*Barbara Fischbein Berenson*, Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. In October, 1987, a Middlesex County grand jury returned two indictments against the defendant. One charged him with assault and battery (G. L. c. 265, § 13A); the other charged him with assault with intent to commit rape (G. L. c. 265, § 24). In April, 1988, a jury returned a verdict of guilty on the assault and battery, but they were unable to reach a verdict on the assault with intent to commit rape charge, and the judge declared a mistrial as to that indictment.

In September, 1988, the defendant was retried and convicted on the indictment charging him with assault with intent to commit rape. It is this conviction from which the defendant has claimed an appeal.

58          30 Mass. App. Ct. 57

Commonwealth *v.* Gassett.

From the testimony of the victim, corroborated by the testimony of two police officers to whom she made fresh complaints, and from the testimony of two neighbors to whose house the victim ran, the jury could have found the following facts.

The victim was introduced to the defendant by the victim's girlfriend, Chris, at a local pub, where the victim and her friend were drinking beer in the early evening of a summer's day in 1987. The defendant and the victim talked, played pool, and drank beer together; the defendant seemed to be a "normal, regular guy," the victim later testified. There was talk of a party at the victim's house, the participants to be Chris and her boyfriend, the defendant, and the victim. Those plans went awry, however, and the victim ended up driving the defendant back to her house, a small one bedroom house on a dead end street. They arrived there at about 10:45 P.M., and entered the house, the victim locking the door behind her.

Once inside the victim's house, the defendant became quiet, in contrast to his earlier behavior. Nevertheless, they watched television together for about twenty minutes, and, because the defendant had no car, the victim told the defendant he could spend the night on the couch. After watching television, the victim said she was going to her bedroom to lie down for a while.

The victim went to her bedroom, turned on the television, lay down on her bed fully clothed, and fell asleep. She next remembered waking up, unclothed, with the defendant, also unclothed, partly on top of her. She was frightened and asked the defendant, "What are you doing?" Whereupon the defendant said that he "wanted to fuck [her]." She became terrified and tried to get off the bed, but the defendant grabbed her by the throat, held her down, and began hitting her with his fists about her face and eyes. "I felt he was going to kill me," she testified. The struggle continued; at some point she managed to grab the defendant's throat and her fingernails left him with a fresh cut two inches long. Eventually they rolled off the bed, and the victim ran for the tele-

phone; as she started dialing the police emergency number, the defendant landed a severe blow on the bridge of her nose. Bleeding, nude and terrified, the victim managed to get to the front doorway through which she escaped to her neighbor's house. When her neighbors let her in, she said several times, "There's a man in my house, and he's a maniac."

The defendant's appeal rests on two claims, both of which hang on the same evidence. First, the defendant argues that the judge's refusal to instruct the jury on assault as a lesser included offense was reversible error. He concedes that the evidence must provide some "rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense," *Commonwealth* v. *Santo*, 375 Mass. 299, 305 (1978), but he claims that from the evidence (described below) the jury could have concluded that the defendant "honestly and reasonably believed . . . [the victim] was interested in a sexual encounter" with him and that this state of mind, if believed, could negate the specific intent to rape and provide the rational basis for acquittal on the charge of assault with intent to commit rape.

The second claim is that the judge erroneously refused to instruct the jury that they could consider, on the issue of the necessary finding of the defendant's specific intent to rape the victim, whether the defendant honestly and reasonably, even if mistakenly, believed that the victim "was intending to have sex" with him.

The evidence to which the defendant points in support of both claims is this: the defendant and the victim spent several hours together drinking and playing pool; the victim invited the defendant home; the victim told the defendant he could sleep at her house; twenty minutes after arriving home and locking the front door, the victim announced that she was going to lie down for a while and then went to her bedroom.

The defendant argues that assault with intent to commit rape is a specific intent crime, see *Commonwealth* v. *Fulgham*, 23 Mass. App. Ct. 422, 427 (1987), and, since this necessary finding of specific intent focuses on the workings of

the defendant's mind, it was error not to instruct the jury that the defendant's mistaken but honest and reasonable belief that the victim intended to have sexual intercourse with him may negate the required finding of specific intent.[1] The defendant refers us to no decision on that point, however, and we have found none.

We need not, and do not, decide the point because it has no relevance to the circumstances of this case. The jury were not presented with any evidence that would have justified the instruction. Once he was in the victim's bedroom and on the bed with her, there was no room for error. When the defendant sought to choke the victim, and when the victim in response dug her fingernails into the defendant's neck, both of

---

[1]Compare *Commonwealth v. White*, 5 Mass. App. Ct. 483, 486 (1977) (honest and reasonable belief of defendant that the property taken belonged to the defendant is a defense to the required finding of the specific intent to steal); *Commonwealth v. Larmey*, 14 Mass. App. Ct. 281, 284 (1982) (required finding of intent to steal can be negated by evidence that the defendant took the victim's money under the mistaken but honest and reasonable belief that the money had been stolen by the victim from others and the defendant intended to return the money to the rightful owners). See Model Penal Code § 2.04(1)(a) comment (1985) ("mistake is a defense when it negatives the existence of a state of mind that is essential to the commission of an offense. . . ").

Drugs, intoxication or mental impairment may also negate specific intent by evidence that the defendant's ability to appreciate the meaning and consequences of his own conduct has been foreclosed. See *Commonwealth v. Costa*, 360 Mass. 177, 186 (1971) (deliberate premeditation may be negated by harmful drugs and narcotics); *Commonwealth v. Henson*, 394 Mass. 584, 592-593 (1985) (intoxication may be considered in connection with specific intent to kill); *Commonwealth v. Grey*, 399 Mass. 469, 470-472 (1987) (mental impairment may be considered in connection with required specific intent to kill or to cause grievous bodily harm). The underlying rationale may be applicable to mistaken belief: evidence of the defendant's mental condition bears on the question whether a crime was committed at all, and, second, there is a possible constitutional infirmity: the denial of the right to prove the absence of a required specific criminal intent may be a deprivation of due process. *Henson, supra* at 593; *Grey, supra* at 470-471.

Where the charge is rape — an offense that does not require proof of specific intent — see *Commonwealth v. Grant*, 391 Mass. 645, 650 (1984), a mistaken but honest and reasonable belief is no defense. See *Commonwealth v. Cordeiro*, 401 Mass. 843, 851 n.11 (1988); *Commonwealth v. Ascolillo*, 405 Mass. 456, 463 (1989).

them knew to a certainty that the defendant sought by force to overcome the opposing will of the victim. See *Commonwealth* v. *Sherry*, 386 Mass. 682, 687 (1982) ("The essence of the crime of rape . . . is sexual intercourse with another compelled by force and against the victim's will or compelled by threat of bodily injury"). In closing argument defense counsel conceded, see *Commonwealth* v. *Barbosa*, 399 Mass. 841, 843-844 & n.4 (1987), the victim's withdrawal of any perceived consent in these terms: "She [referring to the victim] panicked. She screamed. She grabbed his throat. She scratched his throat. She rolled both of them off the bed onto the floor, and went running down the hall to call the police."

The violent persistence of the defendant to overcome the equally persistent objection of the victim was the essence of assault with intent to rape. On the evidence presented, there was no rational basis for an acquittal on the major charge of assault with intent to commit rape and a conviction on the lesser charge of assault, see *Commonwealth* v. *McKay*, 363 Mass. 220, 228 (1973), nor were any different instructions to the jury required. See *Commonwealth* v. *Costa*, 360 Mass. 177, 184 (1971); *Commonwealth* v. *Santo*, 375 Mass. at 305-306 ("a judge is not required to instruct on a hypothesis that is not required by the evidence").

*Judgment affirmed.*