COMMONWEALTH *vs.* MATTHEW SIMCOCK
(and three companion cases[1]).

No. 90-P-1198.

Norfolk. May 10, 1991. - August 6, 1991.

Present: DREBEN, FINE, & GILLERMAN, JJ.

*Rape. Rape-Shield Statute. Consent. Mistake. Indecent Assault and Battery. Practice, Criminal,* Lesser included offense, Instructions to jury, Verdict. *Evidence,* Sexual conduct, Hospital record, Privileged communication.

Discussion of the mistake-of-fact defense as applicable to the issue of consent in a rape case [188-190], and discussion of recent cases [190-191].

At the rape trial of four defendants there was no error in the judge's declining to give a requested instruction that the Commonwealth had the burden of proving, as to each defendant, the absence of a reasonable and honest belief that the complaining witness freely consented to sexual intercourse [191-192], nor was it reversible error for the judge to instruct the jury that a good faith belief as to consent would not be a defense [192-193].

There was no merit to criminal defendants' contention that the judge's comments before closing argument with respect to a requested jury instruction misled them and deprived them of their right to make effective summations. [193-194]

At the rape trial of four defendants, where there was evidentiary basis for the suggestion that, due to a prior head injury, the victim might have been severely effected by the consumption of alcohol and that the defendants knew of the victim's condition, there was no error in the judge's instructing the jury to consider the victim's intoxication in assessing her capacity to consent to sexual intercourse. [194-195]

The judge at a criminal trial correctly denied motions for required findings of not guilty on indictments for indecent assault and battery, and he created no substantial risk of a miscarriage of justice by later dismissing those indictments and instead instructing the jury on indecent assault and battery as a lesser included offense under other indictments charging aggravated rape. [195-196]

In the circumstances of a criminal trial the jury's acquittal of the defendants on charges of rape and conviction on charges of indecent assault

[1]Commonwealth *vs.* Steven C. Beyer; Commonwealth *vs.* Richard J. Clegg; and Commonwealth *vs.* Patrick Simcock.

and battery were not legally impossible, and any inconsistency with the evidence provided no basis for setting the verdicts aside. [196-197]

The judge at a rape trial correctly excluded evidence of the victim's prior sexual conduct under the rape-shield statute, G. L. c. 233, § 21B. [197-199]

In the circumstances of a rape trial held before the decision in *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 882-883 (1991), wherein the judge withheld certain medical and psychiatric records of the victim, the defendants were entitled, in accordance with that decision, to review those records as a possible basis for motions for new trials. [199-200]

Defendants convicted of indecent assault and battery demonstrated no prejudice resulting from the allegedly late release to them of certain medical and psychiatric records of the victim. [200]

INDICTMENTS found and returned in the Superior Court Department on March 16, 1989.

The cases were tried before *Patrick J. King*, J.

*Yvonne P. Toyloy*, Committee for Public Counsel Services, for Matthew Simcock.

*Edward F. Sullivan, Jr.*, for Patrick Simcock.

*Frederick A. Busconi* for Steven C. Beyer & another.

*James F. Lang*, Assistant District Attorney, for the Commonwealth.

FINE, J. Each of the four defendants was charged in a separate indictment with aggravated rape, rape, and indecent assault and battery of the victim in her home in Millis on August 24, 1988. At the close of the evidence, the judge dismissed the rape and indecent assault and battery indictments, but instructed the jury on their substance as lesser included offenses of aggravated rape. The jury found each of the four defendants guilty only of the lesser included offense of indecent assault and battery. On appeal the defendants contend that: (1) they were entitled to instructions on mistake as to the victim's consent; (2) it was error to instruct on the victim's possible incapacity to consent due to the combined effects of intoxication and an earlier head injury; (3) the indecent assault and battery verdicts should be set aside because there is no rational basis for them in the evidence; (4) the judge erred in excluding evidence of prior sexual inci-

dents involving the victim; and (5) the defendants were wrongfully denied access to medical and psychological records concerning the victim. We affirm the convictions but, in accordance with *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 882-883 (1991), order certain records to be made available to defense counsel and the prosecutor as a possible basis for motions for a new trial.

*Facts.* The relevant facts begin more than three years before the alleged assault when the victim was in an automobile accident. She suffered severe head injuries which resulted in a lengthy hospitalization and outpatient care. Her rehabilitation was gradual but marked by progress. In the spring of 1986, she returned to high school as a part-time student, followed by full-time enrollment the next fall, and graduation in 1988. That spring she ran in the Boston Marathon. At the time of trial in early 1990, she still suffered from some residual effects of the head injury. She spoke with a lisp, she had some continuing cognitive deficits causing her to be "slow," and her eyes worked independently of one another.

On the evening of August 24, 1988, the victim was home alone. She telephoned Michelle Simcock, an acquaintance from school. Michelle was not at home, but the victim spoke with Matthew Simcock, Michelle's brother, whom she had met once, and then with Richard Clegg, who was visiting Matthew and whom the victim had known most of her life. During the course of the conversation it was decided that Richard and Matthew would visit the victim. At about 8:00 P.M. they arrived, accompanied by Matthew's brother Patrick, a high school classmate of the victim. They decided to rent a movie. The victim selected "Dirty Dancing," a film she had seen several times.

Matthew and Richard had extended an invitation to Steven Beyer, also slightly known to the victim, and, shortly after the others had begun watching the film, Steven arrived with a case of beer. The victim knew that, because of her head injury, she had a heightened susceptibility to the effects of alcohol. She testified, however, that she drank one full

beer and part of another. Three of the defendants testified[2] to varying amounts of alcohol consumed by the victim, ranging from two beers to three beers plus wine, vodka, and coffee brandy from her parents' liquor cabinet.

As to the events which followed, the victim's testimony differed significantly from that of the defendants. According to the victim, the beer caused her to become overheated. She went into her bedroom and changed into a pair of shorts and a tank top. As she was leaving the bedroom, Steven walked in, forced her onto the bed, removed her clothes and proceeded to have sexual intercourse with her, despite the fact that she protested "not yet," was crying, and asked him to "please stop." When Steven was finished, Patrick, Richard, and then Matthew each, in turn, entered the bedroom and forced her to have sexual intercourse. She was crying the entire time, but spoke only to Richard, to whom she asked "why" and protested "please stop." The victim testified that she had not consented to sexual intercourse with any of the defendants and that she had been afraid because earlier in the evening Matthew had been talking about beating someone's head in.

The three defendants who testified characterized the victim as an initiator and enthusiastic participant in oral and vaginal sex after dancing provocatively in the living room to the film's soundtrack.[3] Steven testified that the sexual encounters began when the victim entered the bedroom where he was making a phone call, took off her shirt, and asked if he was "ready." The testimony of the defendants was not entirely consistent, differing most notably in the descriptions of what transpired after each of them left the bedroom. For example, Patrick testified that, after he had sexual intercourse with the victim, he sent Richard into the bedroom at her request, but Richard testified that the victim came into the living room, wearing nothing, and led him into the bed-

---

[2] All of the defendants testified except Matthew Simcock.

[3] Scientific evidence established that each of the defendants had sexual intercourse with the victim.

room. The defendants also differed as to whether the victim was angry or happy when they left.

The next day, the victim reported the incident to Betty Flaherty, at the time a family friend.[4] After meeting Ms. Flaherty again the following day, the victim spoke with her mother in Ms. Flaherty's presence. A visit to a rape crisis counselor and a doctor followed.[5] Several days later, the victim first spoke to the police.

At trial, the defense produced an expert, Dr. Paul Spiers, who testified that a possible effect of a head injury such as the victim's was lack of impulse control and sexually inappropriate behavior. He also noted that any such disinhibitive tendencies could be amplified by drinking alcohol. Referring to the victim's medical records, he noted that, beginning in January of 1986 and for a year thereafter, the victim had been taking Tegretol, a drug often prescribed to control inappropriate behavior in head injury patients. In rebuttal the Commonwealth produced Dr. Harris Funkenstein, who testified that the victim's injuries were probably not the kind which would produce disinhibition. On cross-examination, however, he stated that the victim's hospital records indicated that, while hospitalized, she had engaged in inappropriate behavior, for that reason treatment with Tegretol for three years was prescribed, and she had been taken off the drug after only one year.

1. *Mistake of fact defense.* The Commonwealth had the same burden of proving lack of the victim's consent for indecent assault and battery as it would have had for rape. The

---

[4]Ms. Flaherty, a close friend of the defendant Richard Clegg's family, was called as a witness for the defendants. She testified that the victim had told her she had done "something very bad" and was "ashamed" and that the four boys "had their fun with her." She testified also that the victim, in response to a question whether they'd been rough with her, had replied "No, they were very nice." According to Ms. Flaherty, when she asked the victim what she had been "doing while all this was going on," the victim responded, "You know me. When I drink . . . . I was just real happy, and I laid there and smiled." Ms. Flaherty at the time of trial was estranged from the victim's family.

[5]The victim's mother, the counselor, and the doctor all testified for the Commonwealth as fresh complaint witnesses.

defendants complain of jury instructions on the issue of the defendants' state of mind as to the victim's consent. The judge was requested to instruct the jury that the Commonwealth had the burden of proving that sexual intercourse was committed without a reasonable and honest belief that the complaining witness freely consented to it. The judge declined to give the requested instruction. Instead, he told the jury: "Even a good faith belief on the part of the defendants that the alleged victim consented is not a defense. The focus of the offense in rape is lack of consent on the part of the victim and not the subjective intent of the defendant while performing the act." The defendants objected at the appropriate time to the failure to give the requested instruction and to the instruction actually given.

A requirement for an instruction based upon one's actual mistake as to consent without regard to its reasonableness in the circumstances would be difficult to justify. See *Commonwealth* v. *Sherry*, 386 Mass. 682, 697 (1982); Estrich, Rape, 95 Yale L.J. 1087, 1101-1104, 1182-1183 (1986). Contrast *Regina* v. *Morgan*, 1976 App. Cas. 182, 214 (because specific intent required for crime of rape under English law, honest belief [whether reasonable or not] negates intent). A requirement for an instruction based upon a reasonable and good faith but mistaken belief on the part of a defendant that the victim consented to sexual intercourse, however, would not be a surprising departure from established principles. Estrich, *supra* at 1104-1105. Such a requirement would comport with general common law principles that some form of mens rea must be proved before there may be a criminal conviction. Thus, an honest and reasonable mistake of fact may be a defense even if the offense charged requires proof of only a general intent. See *Commonwealth* v. *Power*, 7 Met. 596, 602 (1844); *Commonwealth* v. *Presby*, 14 Gray 65, 68-69 (1859); Perkins & Boyce, Criminal Law 1046 (3d ed. 1982). Such a requirement would also comport with general notions of fairness; ordinarily one should not be held blameworthy for a felony for acting in accordance with his honest and reasonable beliefs created by the circumstances.

Commentators generally assume that one's honest and reasonable mistake as to consent may be a defense to rape,[6] and such a defense is widely recognized in other jurisdictions.[7] Trial judges in Massachusetts actually give such instructions with some frequency. See, e.g., *Commonwealth* v. *Cordeiro,* 401 Mass. 843, 849-850 (1988); *Commonwealth* v. *Crowe,* 21 Mass. App. Ct. 456, 485 (1986). Compare *Commonwealth* v. *Lefkowitz,* 20 Mass. App. Ct. 513, 520-521 & n.16 (1985).

In the present case there was a proper request for such an instruction, and there were timely objections to the charge actually given. The evidence, viewed as a whole, raised the issue of honest and reasonable mistake. Although that would not have been so had the record consisted of only the victim's testimony, three of the defendants testified, whether credibly or not, that the victim acted in such a way as to create the impression that she welcomed their sexual advances. The issue of the effect of an honest and reasonable mistake as to consent, thus, is squarely raised.

The issue has been the subject of frequent discussion in recent appellate decisions in Massachusetts. Until *Commonwealth* v. *Ascolillo,* 405 Mass. 456 (1989), pressures seemed to be mounting for recognition of a defense based on honest and reasonable mistake, at least in some cases of alleged rape. The court noted in *Commonwealth* v. *Sherry,* 386 Mass. at 697, that the question whether there was such a defense had never been decided in Massachusetts. Because the defendant in *Sherry* had requested an instruction based

[6] See Berger, Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom, 77 Colum. L. Rev. 1, 61 & n. 360 (1977); Dettmar, Culpable Mistakes in Rape: Eliminating the Defense of Unreasonable Mistake of Fact as to Victim Consent, 89 Dick. L. Rev. 473 (1984-1985); Wiener, Shifting the Communication Burden: A Meaningful Consent Standard in Rape, 6 Harv. Women's L.J. 143, 145 n.10 (1983); Wilkins, Mistake of Fact: A Defense to Rape, Army Lawyer, Dec. 1987, at 24.

[7] See *United States* v. *Short,* 4 C.M.A. 437, 444-445 (1954); *Reynolds* v. *State,* 664 P.2d 621, 622-628 (Alaska Ct. App. 1983); *People* v. *Mayberry,* 15 Cal. 3d 143, 154-157 (1975); *State* v. *Dizon,* 47 Haw. 444, 460-461 (1964); *State* v. *Foster,* 631 S.W.2d 672, 675 (Mo. Ct. App. 1982). See also Am. Jur. 2d, Rape § 10 (1972).

upon an actual mistake, not a reasonable and honest one, the court did not decide the question. See also *Commonwealth* v. *Lefkowitz*, 20 Mass. App. Ct. at 520-521 n.16. The issue arose again in *Commonwealth* v. *Grant*, 391 Mass. 645 (1984). Although an instruction based upon a reasonable and honest mistake as to consent *was* requested in that case, the court again did not resolve the issue because no evidence was presented which would have warranted a finding that the defendant had reasonably and honestly believed that the victim consented to intercourse. *Id.* at 650-651. See also *Commonwealth* v. *Viera*, 401 Mass. 828, 842 (1988). In *Commonwealth* v. *Cordeiro*, 401 Mass. at 849-850, the trial judge gave an instruction on honest and reasonable mistake of fact as to consent. The court held that it was not error for the trial judge to have denied the defendant's request for an instruction that an honest mistake, whether reasonable or not, would be a defense. *Id.* at 850-851.

As we read *Commonwealth* v. *Ascolillo*, 405 Mass. at 463, the right to an instruction on reasonable and honest mistake of fact in a case such as the one before us has been foreclosed. In *Ascolillo* such an instruction was requested and denied, and there was a proper objection. There was evidence from the victim of force and lack of consent. The defendant, however, testified that he and the victim had had sexual relations on numerous prior occasions, often in exchange for cocaine, and that the intercourse on the occasion of the alleged rape was consensual, the victim having entered the defendant's bedroom while he was asleep.[8] The court said, "We conclude that the judge properly refused to instruct the jury, as defense counsel requested, that the defendant was not guilty of rape if he had a reasonable and good faith belief that the victim consented. We have never suggested that, 'in order to establish the crime of rape the Commonwealth must prove in every case not only that the defendant intended intercourse but also that he did not act pursuant to an honest and reasonable belief that the victim consented.' *Common-*

---

[8]Although not all of this testimony appeared in the reported decision in *Ascolillo*, we referred to the briefs filed in the Supreme Judicial Court.

*wealth* v. *Grant*, 391 Mass. 645, 651 (1984). We decline to adopt such a rule." *Commonwealth* v. *Ascolillo*, 405 Mass. at 463.

We see no meaningful distinction between the present case and *Ascolillo* which would justify us in ruling differently as to whether such an instruction is required. See *Commonwealth* v. *Gassett*, 30 Mass. App. Ct. 57, 60 n.1 (1991). Accord *State* v. *Reed*, 479 A.2d 1291, 1296 (Me. 1984) (in Maine, a culpable state of mind is not an element of the crime of rape by force). The absence of such a requirement is consistent with the principle stated with some frequency in our decisions that the Commonwealth is not required to prove a specific intent to have nonconsensual sexual intercourse as an element of the crime of rape. See, e.g., *Commonwealth* v. *Grant*, 391 Mass. at 650-651; *Commonwealth* v. *Crowe*, 21 Mass. App. Ct. at 476. It is also in harmony with the analogous rule that a defendant in a statutory rape case is not entitled to an instruction that a reasonable mistake as to the victim's age is a defense. See *Commonwealth* v. *Miller*, 385 Mass. 521, 525 (1982). Thus, although Massachusetts may be one of only a few States not to recognize a reasonable good faith belief in consent as a defense to rape,[9] we think there was no error in declining to give the requested instruction.

We find more difficult the question whether what the judge *did* say about mistake was reversible error. Not only did he refuse to give the instruction that a reasonable good faith belief as to consent is a defense, but he went on to state that a good faith belief as to consent is *not* a defense. The Commonwealth argues that because the judge referred in the instruction to "the [defendants'] subjective intent," the instruction related only to their unreasonable subjective beliefs. We

---

[9]The jurors were instructed that the Commonwealth had the burden of proving force or threat of force in addition to an absence of consent. They were also told to consider the victim's actions, and anything she did in communicating her intentions to the defendants, in determining whether she consented. It is most unlikely, therefore, that the jury found lack of consent based upon unexpressed misgivings in the mind of the victim that were inconsistent with her words and actions.

think, on the contrary, the jury could have construed the instruction to mean that a belief that the victim consented would not be a defense even if reasonable. Certainly the instruction given was unnecessary, and it would have been better had it been omitted. It was inconsistent with instructions often given by trial judges in the Commonwealth which, even if not required by appellate courts, have been noted without disapproval. It was, perhaps, less favorable to the defendants for the judge to have said what he did than for him to have remained silent on the subject. Nevertheless, the instruction given in this case was nothing more than a statement of law consistent with *Commonwealth* v. *Ascolillo*, 405 Mass. at 463, as we understand it.

The defendants contend that, even if as an abstract proposition the instructions on reasonable mistake were not improper, the judge's comments before oral argument misled them and deprived them of their right to make effective summations. See *Commonwealth* v. *Sena*, 29 Mass. App. Ct. 463, 468 n.7 (1990). The facts do not bear out the contention. Only Matthew Simcock made a written request for an instruction on reasonable mistake. It appeared as item number six in his requests for jury instructions. The day before final argument, the judge and the attorneys conferred at length about the instructions. The judge expressed some uncertainty about the language of request number six. He noted, correctly, that no Massachusetts court had ever ruled that such an instruction was required. The following colloquy took place:

> THE COURT: "But if what the defendants are asking me to instruct the jurors [is] as follows, I think it's probably correct that if the complaining witness invited them to have sex but in her own mind she really didn't want to have sex with them but she invited them, and they had sex with her, and they had no reason to believe that she didn't voluntarily agree to have sex with them, then that wouldn't be rape. Is that the substance of it, [counsel]?

COUNSEL FOR
MATTHEW SIMCOCK: "That's the substance of it, judge.
THE COURT: "I don't see any problem with that."

The next day, however, before closing argument, the judge informed counsel that he would not give the requested instruction. He stated that he did not think request number six was a correct statement of the law. None of the defense attorneys requested time to reformulate their closing arguments. Contrary to the defendants' assertions on appeal, the closing arguments they proceeded to make were not tailored to a reasonable mistake instruction. The arguments were to the effect, first, that the victim consented, but for the sake of her reputation and for other reasons, she later stated, falsely, that she had not consented, and, second, in an effort to counter the force of the instruction based on the combined effect of the consumption of alcohol and head injury on the victim's capacity to consent, that the defendants were unaware of her condition.

2. *The instructions on the victim's possible incapacity to consent.* The defendants contend that it was also error for the judge to give the following charge:

> "If there was restraint due to fear, intoxication or some other cause, there could be no consent. In this case, there was evidence concerning alcohol consumption by [the victim] and the effect alcohol had on her, given the brain damage she sustained as the result of an automobile accident. I instruct you that under the law, where a man has sexual intercourse with a woman, using such force as is necessary to accomplish his purpose while knowing that she is utterly senseless so as to be unable to consent, then that man has committed the crime of rape. Thus, when considering whether [the victim] consented to sexual intercourse, you may consider her mental state and degree of intoxication, if any, at the time of the incident alleged in this case on August 24, 1988."

In *Commonwealth* v. *Ascolillo*, 405 Mass. at 463, the jurors were instructed in similar terms to consider the victim's intoxication in assessing her capacity to consent. See also *Commonwealth* v. *Burke*, 105 Mass. 376, 380-381 (1870). In *Ascolillo*, *supra* at 464, the defendant argued that the instruction was wholly inapplicable and not warranted by the evidence. The court held that the instruction was warranted by evidence that the victim had been drinking and using cocaine prior to the sexual act, including testimony by the defendant that "she had had too much" cocaine and that "she looked pretty high." In the present appeal, the defendants also argue that the instruction was unwarranted by the evidence. Certainly the evidence fell short of suggesting the victim was in a state of stupefaction or unconsciousness. Compare *Commonwealth* v. *Burke*, 105 Mass. at 377; *Commonwealth* v. *Helfant*, 398 Mass. 214, 221-222 (1986). As in *Ascolillo*, however, there was at least some evidentiary basis for the suggestion that the victim might have been severely affected so as to lack control and that the defendants knew of her condition. One defendant described the victim as "buzzed"; another testified that she had consumed a significant amount of alcohol. All four knew about her head injury if not the particular effect alcohol might have on her mental state. There was no reversible error.

3. *Validity of indecent assault and battery verdicts.* The defendants were convicted only of the lesser included offense of indecent assault and battery and acquitted of the more serious charges of aggravated rape and rape. There was no evidence of any indecent touching other than the alleged acts of intercourse. Thus, there was no rational basis for convictions of the lesser included offense. On appeal, the defendants argue that the judge erred, therefore, in denying their motions for required findings of not guilty, instructing the jury on the lesser offense, and denying their motions to set aside the verdicts.

The elements of indecent assault and battery were proved beyond a reasonable doubt. Thus, the judge did not err in denying the motions for required findings of not guilty. The

only occasion before the jury reached their verdicts on which there was mention of a lack of a rational basis for findings of indecent assault and battery was after the close of all the evidence. Matthew's attorney argued briefly that the evidence supported only the aggravated rape charge. She did not address the specific issue whether the jury could rationally find the defendant guilty of indecent assault and battery. Moreover, even that brief argument, made on behalf of only one of the defendants, was abandoned. There were no relevant objections voiced when, the next day, the judge informed counsel of his intention to consolidate the indictments and instruct the jury on rape and indecent assault and battery as lesser included offenses within the charge of aggravated rape. Nor were there any relevant objections after the charge.

Had the issue been raised timely and in proper form, submitting the lesser included offense of indecent assault and battery to the jury might have been error. Compare *Commonwealth* v. *Vasquez*, 27 Mass. App. Ct. 655, 660-661 (1989). In the absence of a timely and proper objection, however, our review is only to determine whether there was a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Doucette*, 391 Mass. 443, 450 (1984). We are not convinced that the error, if any, harmed the defendants. Most likely, the defendants acquiesced in the submission of the lesser charges as a matter of tactics, and the verdicts were an expression of leniency on the part of the jury. The consequences of trial tactics may not be converted after conviction into alleged errors by the judge. See *Commonwealth* v. *Johnson*, 374 Mass. 453, 465 (1978); *Commonwealth* v. *Shelley*, 381 Mass. 340, 349 (1980); *Commonwealth* v. *Egerton*, 396 Mass. 499, 505 n.4 (1986). The less is this so if the tactics produce some measure of success, as they did here.

The verdicts may represent some factual inconsistency with the evidence at trial, but they do not represent a legal impossibility. Contrast *Commonwealth* v. *Haskins*, 128 Mass. 60, 61 (1880); *Commonwealth* v. *Carson*, 349 Mass.

430, 434-436 (1965). A factual inconsistency is not a suffi-
cient basis for setting aside verdicts. The acquittals on the
rape charges could have "result[ed] from any number of fac-
tors having nothing to do with the defendant[s'] actual
guilt." *Commonwealth* v. *Cerveny*, 387 Mass. 280, 285
(1982). Whether the jury acted out of leniency, as the judge
assumed and as we assume, or fashioned a compromise, the
"mere inconsistency in verdicts, one of which is an acquittal,
will not render the verdict of guilty erroneous . . . ." *Com-
monwealth* v. *Scott*, 355 Mass. 471, 475 (1969). See *Com-
monwealth* v. *Sherry*, 386 Mass. at 699; *Commonwealth* v.
*Diaz*, 19 Mass. App. Ct. 29, 33 (1984); *Commonwealth* v.
*Harrison*, 25 Mass. App. Ct. 267, 270 (1988). Contrast
*Commonwealth* v. *Bouvier*, 316 Mass. 489 (1944).

4. *Exclusion of evidence of prior sexual conduct.* The
March 8, 1986, discharge summary from the Lewis Bay
Head Injury Center, where the victim had been hospitalized,
indicates that the victim engaged in "episodes of disinhibi-
tion relating to the staff, some with a somewhat sexual over-
tone," and a weekly progress report, dated January 7, 1986,
notes that "[s]ome issues regarding sexuality continue to be
dealt with by the social worker." There was also a suggestion
in the records that on one occasion in 1985 the victim had
had sexual intercourse with another patient. Prior to trial,
the defendants moved for admissibility of this evidence on
the issue of consent. After initially reserving judgment, the
judge ruled the evidence inadmissible, citing the rape-shield
statute, G. L. c. 233, § 21B. The defendants argue that the
evidence was relevant to the issue of consent and that their
right under the Sixth Amendment to the United States Con-
stitution to confront witnesses has been violated. We
disagree.

With an express exception not here applicable, G. L.
c. 233, § 21B, as amended by St. 1983, c. 367, prohibits in-
troduction in a rape case of "[e]vidence of the reputation of
a victim's sexual conduct" and "[e]vidence of specific in-
stances of a victim's sexual conduct." Such evidence is ex-
cluded because it tends to put the witness on trial, it can be

highly prejudicial to the prosecution, it tends to encourage litigation of collateral matters, and it "has little probative value on the issue of consent." *Commonwealth* v. *Joyce*, 382 Mass. 222, 227 (1981). See also *Commonwealth* v. *Manning*, 367 Mass. 605, 613-614 (1975) (Braucher, J., dissenting). Exceptions to the proscription have been recognized by our courts in circumstances where the proffered evidence is probative because it tends to show the victim's bias or motive to lie, see *Commonwealth* v. *Joyce*, 382 Mass. at 231, that she made a prior false allegation of rape, see *Commonwealth* v. *Bohannon*, 376 Mass. 90, 94-95 (1978), or to establish that the defendant was misidentified, see *Commonwealth* v. *Cardoza*, 29 Mass. App. Ct. 645, 648-649 (1990). The defendants do not argue, and indeed could not argue convincingly, the applicability of any of these exceptions to their case.

It may well be that the evidence concerning the victim's prior episodes of disinhibition is different in nature from that contemplated by the statute because the conduct was the product of a medical condition. As to the one instance of prior sexual intercourse noted in the records, however, the evidence would have had little, if any, relevance to the issue of consent. "[C]onsent to intercourse with one man does not imply . . . consent in the case of another." *Commonwealth* v. *McKay*, 363 Mass. 220, 227 (1973). Moreover, admission of such evidence would have raised a collateral issue and tended to "prolong the trial and divert the attention of the trier of fact from the alleged criminal acts of the defendant," situations which the rape-shield statute was intended to avoid. *Commonwealth* v. *Joyce*, 382 Mass. at 227. Even if evidence of prior sexual intercourse causally related to a medical condition might be admissible in some case, there was no reversible error in the present case where the prior conduct predated the contested incident by almost two years, and where nothing in the record supports the contention that such behavior continued after the victim left Lewis Bay.

As to the other notations in the records, relating generally to the victim's sexual disinhibition, any prejudice to the defendants caused by their exclusion was minimal. Through the

testimony of the defendants' expert, Dr. Spiers, and cross-examination of the Commonwealth's expert, Dr. Funkenstein, the defense established that head injuries such as the victim's do, sometimes, result in sexual disinhibition and lack of impulse control. The defense also established, based on the experts' examination of the medical reports, that the victim had exhibited inappropriate behavior while at Lewis Bay. During their closing arguments, the defendants effectively argued the obvious inference without resort to the excluded evidence. Compare *Commonwealth* v. *Elder*, 389 Mass. 743, 750-751 (1983); *Commonwealth* v. *Heath*, 24 Mass. App. Ct. 437, 444-445 (1987).

5. *Access to medical and psychological records.* Several months prior to trial, the defendants requested production of the victim's medical and psychiatric records from all the institutions involved in her treatment and rehabilitation. The records were examined in camera by the motion judge, who declined to release them to the defense. Several weeks before the scheduled trial date, the defendants renewed their motions. A second motion judge reviewed the records in camera and released approximately 1,400 pages of documents, nearly all that was requested. On the first day of trial, the defendants sought additional records, including the therapy notes of Dr. Stephen Robinson, a psychologist who had been testing the victim's cognitive functioning in August of 1988 and who had seen her both on the day of the incident and on the day after she had reported the incident to her mother. After an in camera review, the trial judge declined to release the therapy notes. The defendants argue that they were prejudiced by the decision not to release the therapy notes and by the untimely release of the other materials.

Concerning the therapy notes, *Commonwealth* v. *Stockhammer*, 409 Mass. at 882-884, decided after the briefing of these appeals but before argument, appears to be dispositive.[10] In *Stockhammer* the Supreme Judicial Court

---

[10]At oral argument the Commonwealth conceded that *Stockhammer* entitled the defendants to the relief we grant. We need not rule conclusively, therefore, on the applicability of the rule stated in that case to a case in

decided that, upon a showing of need, art. 12 of the Massachusetts Declaration of Rights entitled counsel of a defendant in a rape case "to review the records of the complainant's treatment . . . to search for evidence of bias, prejudice, or motive to lie." *Id.* at 884. Contrast *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 59-61 (1987). As the therapy notes sought by the defendants are potentially relevant, they are entitled to review them, and based on what they discover, move for a new trial. The judge shall take appropriate steps to guard against any unnecessary invasion of the victim's privacy resulting from the review. See *Commonwealth* v. *Stockhammer*, 409 Mass. at 882-883.

Concerning the defendants' contention that they were prejudiced by the untimely release of the other records, virtually on the eve of trial, they have failed to identify any information not presented at trial which would have strengthened their case. There was, therefore, no prejudice.

Accordingly, we affirm the judgments. The case is remanded to the Superior Court for the purpose of allowing counsel in the case, subject to appropriate protective orders, to review Dr. Robinson's therapy notes previously reviewed by the trial judge in camera.

*So ordered.*

which a defendant is charged with indecent assault and battery and not rape.