ROBERT H. BLANK, administrator, *vs.* JEANNE HUBBUCH & others.[1] No. 92-P-1682. May 27, 1994. *Jury and Jurors. Practice, Civil*, Challenge of jurors, Examination of jurors, Judicial discretion.

The plaintiff, as administrator of his daughter's estate, brought a wrongful death action to recover damages for her suffering and death from widespread metastatic cancer. He alleged that she would have had a significantly increased chance of survival had it not been for the negligence of the defendants, Jeanne Hubbuch, M.D., Kathleen Mayzel, M.D., and the

---

[1]Kathleen Mayzel and Joseph M. Smith Community Health Center.

Joseph M. Smith Community Health Center. The jury returned a verdict in favor of the defendants. We affirm the judgment.

The plaintiff argues that the trial judge committed error by (1) refusing to conduct a more extensive individual voir dire of Dr. Michael Ross, a physician selected to sit on the petit jury, and (2) denying his challenge of Dr. Ross for cause. In addition, he contends that he was deprived of a fair and impartial trial because of the judge's alleged inappropriate conduct.

After swearing in the prospective jurors, the judge explained that the case involved a malpractice claim "for failure to diagnose breast cancer, involving the death of the patient." He then asked the jurors, as a group, a series of questions to test their impartiality, which included the inquiries suggested by G. L. c. 234, § 28. Toward the end of the questioning, he reiterated that:

> "[T]his case concerns a claim, as I told you, that two physicians failed to diagnose breast cancer.

> "Now, is there anything in your life, in your associations, in your friendships, in your relations that would, in any way, I mean in any way, affect your decision in this case?. . . . Would the fact that this a [sic] claim against physicians and a health center affect you in any way, either positively or negatively, in deciding this case?"

Dr. Ross raised his hand in response to one question and explained at sidebar that he recognized the name of a prospective witness, who, it turned out, was not the woman he knew. At this point, the plaintiff's counsel, who had noted from the doctor's jury questionnaire that he was a physician, requested that the judge ascertain the nature of Dr. Ross's practice and whether that might affect his ability to be fair in judging other physicians. The judge then asked, "Doctor, the question is, whether you would be able to decide this case 100 percent on the evidence that you hear in court," to which Dr. Ross responded, "I think I could."

The plaintiff objected to the judge's decision not to ask more specific questions and challenged Dr. Ross for cause on the ground that he could not fairly judge the case because he shared the same profession as two of the defendants.[2] The judge denied the challenge, noting in part that, "[t]he fact that [Dr. Ross] is a physician does not, in my judgment or experience, mean that he will not be a fair and impartial juror . . . it seems to me . . . that when people say that they will do an honest job deciding the case, I take them at their word."

At the continuation of jury selection two days later, the plaintiff submitted a motion for reconsideration of the denial of his challenge. Here, the plaintiff pointed out that Dr. Ross specialized in anatomical and clinical

---

[2]By this time the plaintiff had exercised all his peremptory challenges.

pathology, an area allegedly related to certain issues in the case, and that Dr. Ross was associated with several institutions with which the defendants were associated. The judge, as a matter of discretion, declined to reconsider his earlier decision, and stated that he would not ask Dr. Ross further questions. It was possible that the new information might yield responses from Dr. Ross that would be fairly close to the bone, and the judge might well have inquired further of the juror. But we cannot say that his failure to do so was an abuse of discretion. Partiality is not established merely by showing the occupation of a challenged juror or by showing peripheral associations. See *Commonwealth* v. *Ascolillo*, 405 Mass. 456, 460 (1989), where the cases are collected.

The appellant contends that the judge violated G. L. c. 234, § 28,[3] by refusing to conduct a more extensive individual voir dire of Dr. Ross. The second paragraph of § 28 "is designed to impose a duty on the judge to examine jurors fully with respect to possible bias or prejudice *if* it appears that particular jurors or the jury pool as a whole may be influenced by extraneous factors to the extent that jurors would be unable to render an impartial verdict on the evidence presented to them." *Commonwealth* v. *Shelly*, 381 Mass. 340, 352 (1980), quoting from *Commonwealth* v. *Dickerson*, 372 Mass. 783, 793 (1977) (emphasis added). See *Commonwealth* v. *Grice*, 410 Mass. 586, 588 (1991). We will not disturb the judge's determination that a prospective juror need not be questioned further "unless the complaining party demonstrates that there was a substantial risk" that extraneous issues would be injected into the deliberations. *Commonwealth* v. *Mahoney*, 406 Mass. 843, 850-851 (1990). Accord *Commonwealth* v. *Jones*, 9 Mass. App. Ct. 103, 114-115 (1980), *S.C.*, 382 Mass. 387 (1981). The matter rests in the sound discretion of the judge, *Commonwealth* v. *Boyer*, 400 Mass. 52, 55 (1987), and in exercising that discretion the judge is "entitled to accept the suspect juror's declaration . . . that she was disinterested and not impeded by any emotional or intellectual commitment." *Commonwealth* v. *Mahoney*, 406 Mass. at 851. We see no abuse of discretion here. There was no showing that there was a substantial risk that the case would be decided on the basis of extraneous issues. The juror insisted

---

[3]The second paragraph of G. L. c. 234, § 28, amended by St. 1975, c. 335, provides in pertinent part:

> "For the purpose of determining whether a juror stands indifferent in the case, if it appears that, as a result of the impact of considerations which may cause a decision or decisions to be made in whole or in part upon issues extraneous to the case, including, but not limited to, community attitudes, possible exposure to potentially prejudicial material or possible preconceived opinions toward the credibility of certain classes of persons, the juror may not stand indifferent, the court shall . . . examine the juror specifically with respect to such considerations, attitudes, exposure, opinions or any other matters which may, as aforesaid, cause a decision or decisions to be made in whole or in part upon issues extraneous to the issues in the case."

on his impartiality, and the judge, who observed the juror, was, as we pointed out, entitled to accept his answer. Further, where only one juror is involved, we are especially reluctant to reverse the decision of the trial judge. See *Commonwealth* v. *Dickerson*, 372 Mass. 783, 794 (1977).

There is no merit to the plaintiff's additional argument that Dr. Ross should have been excused for cause. The mere fact that the juror was a physician is irrelevant, for a person, by statute, may not be excluded from serving as a juror because of his occupation. See G. L. c. 234A, § 3. See *Commonwealth* v. *Ascolillo*, 405 Mass. at 460-461 (at a rape trial, the mere fact that a prospective juror was a police officer held not sufficient to sustain a challenge for cause). The plaintiff has a "heavy.burden" to establish error on a rejected challenge for cause, *id.* at 459, and here he failed to carry that burden merely by describing the juror's occupation and his involvement in various aspects of his profession, such as hospital affiliations. The fact that this is a medical malpractice case does not affect either the analysis or the result.

Courts in other jurisdictions have reached similar results. In *State* v. *Aguilar*, 169 Ariz. 180, 181-182 (Ct. App. 1991), for instance, the Court of Appeals of Arizona held that a physician's knowledge, shared with his fellow jurors, regarding alcohol and cocaine intoxication and blackouts, as well as his expressed disagreement with the medical expert witness's testimony did not constitute extrinsic evidence, reasoning that jurors may rely on their common sense, experience, and any expertise they may have on a given subject. See *Brooks* v. *Zahn*, 170 Ariz. 545, 550-551 (Ct. App. 1991) (registered nurse's comments during jury deliberation regarding antibiotics, surgery and postoperative healing in medical malpractice action held product of her own experience and knowledge and not extraneous); *Baker* v. *Wal-Mart Stores, Inc.*, 727 S.W.2d 53, 55 (Tex. Ct. App. 1987) (nurse-juror's statements regarding possible effects of certain drugs taken by plaintiff held not extraneous). See also *Hard* v. *Burlington N. R.R.*, 870 F.2d 1454, 1462 (9th Cir. 1989) (special knowledge of X-ray interpretation held to be life experience).

We have reviewed the various additional arguments made by the plaintiff to the effect that he was denied a fair trial, and we conclude that there is no merit to any of them.

*Judgment affirmed.*

*Jonathan Shapiro* for the plaintiff.
*M. Catherine Huddleson* for Kathleen Mayzel.
*Barbara H. Buell* for Jeanne Hubbuch.
*Debra A. Joyce* for Joseph M. Smith Community Health Center.