## COMMONWEALTH *vs.* DAVID BLACHE.

Essex. October 1, 2007. - February 8, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Rape. Practice, Criminal,* Instructions to jury. *Consent. Intoxication. Mistake. Words,* "Insensible."

Discussion of this court's holding in *Commonwealth* v. *Burke*, 105 Mass. 376 (1870), which established principles governing in cases of rape where the Commonwealth proceeds on the theory that the complainant lacked the capacity to consent. [588-590]

This court concluded that at a rape trial, an instruction to the jury concerning the complainant's capacity to consent should be given where the evidence would support a finding that because of the consumption of drugs or alcohol or for some other reason (for example, sleep, unconsciousness, mental retardation, or helplessness), the complainant was so impaired as to be incapable of consenting to intercourse; further, if the jury find that the Commonwealth has proved beyond a reasonable doubt the complainant's incapacity according to this standard, that finding satisfies the element of lack of consent, and as a corollary, the Commonwealth need prove only the amount of force necessary to accomplish intercourse [590-592], and the fact that the defendant knew or should have known that the complainant's condition rendered the complainant incapable of consent [592-595]. SPINA, J., concurring in part and dissenting in part, with whom COWIN, J., joined.

At a rape trial, the judge's instructions on intoxication and the complainant's capacity to consent failed to explain fully or with sufficient clarity the Commonwealth's burden of proof on the issue of lack of consent or that of the defendant's awareness of the complainant's possible incapacity; where the issue of lack of consent was the principal if not only contested issue before the jury, the errors in the charge were prejudicial and the defendant was entitled to a new trial, at which the defendant would also be entitled to instructions addressing the issue of the defendant's awareness of the complainant's possible incapacity. [595-597] SPINA, J., concurring in part and dissenting in part, with whom COWIN, J., joined.

The defendant at a rape trial failed to demonstrate that the evidence was not sufficient to justify an instruction about the complainant's possible incapacity to consent. [597-598] SPINA, J., concurring in part and dissenting in part, with whom COWIN, J., joined.

At a rape trial, the judge did not err in declining to instruct the jury that a reasonable and good faith mistake of fact as to the complainant's consent is a defense to rape. [598-599]

INDICTMENT found and returned in the Superior Court Department on June 27, 2001.

The case was tried before *Barbara J. Rouse, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Jennifer Marie Petersen & Karl R.D. Suchecki* for the defendant.

*Catherine Langevin Semel,* Assistant District Attorney, for the Commonwealth.

BOTSFORD, J. A jury in the Superior Court convicted the defendant on an indictment charging rape in violation of G. L. c. 265, § 22 (*b*). The Appeals Court affirmed the defendant's conviction in an unpublished memorandum and order issued pursuant to its rule 1:28. *Commonwealth* v. *Blache,* 67 Mass. App. Ct. 1105 (2006). Thereafter, we granted the defendant's application for further appellate review. The defendant concedes the fact of intercourse but claims it was consensual, and he argues that errors in his trial require the reversal of his conviction.

In particular, the defendant challenges the judge's instructions to the jury concerning the elements the Commonwealth must prove to obtain a conviction of the crime of rape; he focuses in significant part on the instructions concerning the complainant's possible incapacity to consent. Since at least 1870, we have recognized that in cases of rape, while the Commonwealth must prove the complainant's lack of consent as an element of the crime, there are circumstances in which this element may be satisfied by proof that the complainant lacked the capacity to consent. *Commonwealth* v. *Burke,* 105 Mass. 376 (1870) (*Burke*). In this case, we return to *Burke* and examine once again circumstances that may affect a complainant's capacity to consent, and whether, as *Burke* suggests, the defendant's knowledge of the complainant's incapacity must be shown. We conclude that the judge's instructions failed to explain adequately what must be established about a complainant's condition before the complainant may be deemed incapable of giving or withholding consent. For the reasons explained below, we reverse the defendant's conviction.

1. *Background.* There was evidence at trial from which the jury could have found the following. On August 17, 2000, the complainant, who was twenty-six years old, went out with a female friend to a bar in Haverhill. The complainant was five

feet, two inches tall and weighed 110 pounds. Before leaving home at around 7 P.M., the complainant smoked marijuana and took an antianxiety medication called Klonopin. She had not eaten any food all day. The complainant had "[a] couple" of alcoholic drinks at the first bar she visited, and drank "[a] lot" at a second bar, where she spent the latter part of the evening. Between 11:30 P.M. and midnight, the complainant and her friend were joined by David MacRae, whom the complainant had been dating for about one week, and his friend Allan Castro. By that time, the complainant was "very drunk," and she had only intermittent memories of the remainder of the evening. When the group left the bar shortly before it closed, the complainant was "causing a scene," was argumentative, had difficulty walking, and fell twice. The complainant's friend took her keys to drive her home. Ultimately, however, Castro drove the complainant's friend home in the complainant's truck, and then he, MacRae, and the complainant drove to MacRae's house in Methuen.

At MacRae's house, the complainant continued to behave belligerently. She attempted to leave MacRae's house but drove her truck into his fence and then backed up into the house itself, at which point MacRae took her keys. Castro telephoned the police, and MacRae told them he needed assistance with an unwanted and very intoxicated female guest. Before the police arrived, the complainant returned to the house and "passed out" for some time.

The Methuen police dispatched the defendant, Officer David Blache, to respond to the call; he arrived at MacRae's house just before 2 A.M. When the defendant arrived, the complainant woke up; she was "still drunk," and Castro saw her fall "straight back and hit her head . . . [o]n the wall." The defendant spent about forty-five minutes at the house gathering information for an accident report and arranging for the complainant's truck to be towed. During this time, according to MacRae, Castro, the defendant, and the tow truck driver, the complainant exhibited sexually aggressive behavior toward the defendant. She touched him, tried to kiss him and "grab[] his crotch," asked him if he wanted to have sex with her, licked the windows of his police cruiser, and pulled down her pants to show the defendant her genitals. Witnesses also testified that at this time she was still

drunk; she slurred her speech; and she pulled down her pants and began to urinate in the street in front of MacRae's house when he refused to allow her back inside to use his bathroom. While the defendant was speaking with MacRae, he allowed the complainant to sit in the front seat of his cruiser because she was cold; after she twice turned on the cruiser's lights and siren, he transferred her to the back seat.

After arranging to have the complainant's truck towed, the defendant obtained permission from police headquarters to transport her home to Haverhill because she did not have enough money to pay for a taxi. The complainant testified that she did not remember leaving MacRae's house in the cruiser, and that the next thing she remembered was the car pulling up next to a dumpster. Once the car stopped, the defendant opened the driver's side rear door, pulled down the complainant's pants, and vaginally raped her in the back seat of the cruiser. She testified that she told him she "didn't want to do that," and tried to kick the defendant and the partition between the front and rear seats, but she was unable to open the opposite door because there was no interior handle. She further testified that the defendant then drove her home, and when he dropped her off he warned her that the police have a "code of silence" and they would not believe her.

The defendant also testified at trial. He admitted having intercourse with the complainant, but he claimed that it was consensual and occurred at her house. According to the defendant, he dropped the complainant at home and cleared the call with headquarters, then he knocked on her door and asked to use her bathroom. He testified that when he emerged from the bathroom, the complainant was completely naked; they embraced, she performed oral sex on him, and they had consensual intercourse on her couch.

Although the complainant did not remember making any telephone calls after she returned home, the prosecutor played recordings of two 911 calls she placed to the Haverhill police. Additionally, Castro testified that he answered two calls from the complainant at MacRae's house about one-half hour after the complainant had left with the defendant. In the first call, she said in a "bragging" or "sarcastic" tone, "Tell Dave [MacRae] thanks for the best fuck of my life," and hung up. In the second

call, a few minutes later, she said, "Tell Dave I'm going to go for the whole rape thing," and hung up.

Haverhill police responded to the complainant's 911 calls at about 3:30 A.M. and convinced her to go to the hospital for a sexual assault examination. Two female officers who assisted the complainant that morning testified as fresh complaint witnesses[1]; they described the complainant as quite upset and still intoxicated. The vaginal swab taken from the complainant as part of the examination contained sperm cells, but the oral swab did not. The deoxyribonucleic acid (DNA) of the sperm cells collected matched a blood sample submitted by the defendant. Sperm was also detected in a stain on the zipper area of the defendant's uniform pants but not in the back seat of the cruiser. The complainant's blood was drawn at 7:30 A.M.; testing revealed a blood alcohol level at that time of 0.14 per cent, as well as evidence of marijuana.[2] Using retrograde extrapolation, a toxicology expert testified that the complainant's blood alcohol level at 2:30 to 3 A.M. would have been between 0.176 and 0.24 per cent, a level that typically causes disorientation, loss of judgment, impaired perception, lethargy, imbalance, slurred speech, loss of memory, impaired comprehension, and confusion.

In her charge to the jury, the judge touched on the issue of intoxication twice, first in defining the element of force required for the crime of rape, and later in explaining the crime's additional element of lack of consent on the part of the complainant. In explaining force, the judge instructed that "[t]he crime of rape may be accomplished through the use of actual physical force or violence," but explained that this need not always be the case. She went on to say, "for example, if [a complainant's] condition as a result of being intoxicated or unconscious or asleep is such that she is wholly insensible so as to be incapable of consenting, then the Commonwealth need only prove that amount of force which was necessary to accomplish the natural or unnatural sexual intercourse." In her separate explanation of the crime's element

---

[1] This case was tried before *Commonwealth* v. *King*, 445 Mass. 217, 237-248 (2005), which replaced the "fresh complaint" doctrine with the "first complaint" rule.

[2] A toxicologist testified that a therapeutic dose of Klonopin would not be detected without the use of a more sensitive test.

of lack of complainant consent, however, the judge told the jury
only that they might consider evidence of the complainant's
"sobriety" in assessing her capacity to consent. The judge did not
repeat that the complainant's level of *in*sobriety or intoxication
must be such that she was "wholly insensible" in order for the
jury to find her incapable of consenting.[3]

During their deliberations, the jury submitted a question to the
judge asking, "Could you please clarify the definition of 'wholly'
insensible?" The judge worked with the prosecutor and defense
counsel in an attempt to frame a response, but she ultimately
determined that the instruction was sufficiently clear as given.
She accordingly instructed the jury, over the defendant's objec-
tion, to "apply your collective understanding of what those words
mean in our ordinary discourse and . . . with some discussion
among yourselves, decide the meaning of those words. Each
word by itself is plain and are words that are used in ordinary
discourse, and I cannot give you any further legal definition or
clarification."

2. Commonwealth *v.* Burke *and instructions on incapacity to
consent.* In challenging the judge's instruction on rape, the de-
fendant argues that the judge erred in her explanation concern-
ing the circumstances in which a complainant may be found to
lack the capacity to consent, and compounded the error by refus-
ing to explain her instruction further in response to the jury's
question about the meaning of her words.[4] At trial, the defendant
objected to the language of the judge's instruction and to the
judge's decision not to respond substantively to the jury's question.
Accordingly, the defendant's claim of error is preserved.

When the judge told the jury that the complainant's "condi-
tion as a result of being intoxicated or unconscious or asleep
[may be] such that she is *wholly insensible so as to be incap-
able of consenting*" (emphasis supplied), she was quoting lan-
guage from this court's decision in *Burke*. *Burke* was a case
involving a defendant charged with aiding and assisting in the

---

[3]The judge's instruction is quoted in full and discussed in part 2 (c), *infra.*

[4]The defendant also argues at some length that the evidence in this case did
not even warrant an instruction suggesting the jury might find the complainant
lacked the capacity to consent. We consider the defendant's objection regard-
ing the sufficiency of the incapacity evidence in part 3, *infra.*

rape of an extremely intoxicated woman.[5] After reviewing English common-law precedents defining the crime of rape as "the carnal knowledge of a woman by force and against her will,"[6] and demonstrating that the phrase "against her will" was synonymous with "without her consent," *id.* at 380, the court held as follows: "We are therefore unanimously of opinion that the crime, which the evidence in this case tended to prove, of a man's having carnal intercourse with a woman, without her consent, while she was, as he knew, wholly insensible so as to be incapable of consenting, and with such force as was necessary to accomplish the purpose, was rape." *Id.* at 380-381.

This holding in *Burke* contains two premises that bear on the issue of a complainant's incapacity to consent. The first has two parts and can be summarized as follows: While generally for the crime of rape the Commonwealth must prove that the alleged sexual intercourse occurred by force and without the complainant's consent,[7] where the complainant is "wholly insensible so as to be incapable of consenting," (a) the element of lack of consent is satisfied; and (b) the only force required for proof of the crime is "such force as was necessary to accomplish" the act of intercourse — that is, only the force necessary to effect penetration. The second premise is perhaps more implicit than explicit. It is this: Where the Commonwealth uses proof that the complainant has been rendered "incapable of consenting" to establish the necessary element of her lack of consent and to reduce the degree of required force, the Commonwealth should also prove the defendant's knowledge of the complainant's incapacitated state.

Over the years, *Burke* has continued to be cited in Massachusetts decisions, and to be reflected in the rape instructions that trial judges give. However, in cases after *Burke*, instruc-

---

[5] The court described the victim as having been "so drunk as to be utterly senseless." *Commonwealth* v. *Burke*, 105 Mass. 376, 377 (1870) (*Burke*).

[6] *Id.* at 378, quoting Lord Coke, 3 Inst. 60.

[7] Our cases have construed "by force" and "without consent" as two separate elements. See *Commonwealth* v. *Lopez*, 433 Mass. 722, 727 (2001). However, in most cases not involving complainant incapacity, both force and lack of consent can be proved by the same evidence. See, e.g., *Commonwealth* v. *Lefkowitz*, 20 Mass. App. Ct. 513, 519 (1985) ("the prosecution has proved rape if the jury concludes that the intercourse was in fact nonconsensual [that is, effectuated by force or by threat of bodily injury]" [parenthetical in original]).

tions used by trial judges (and implicitly approved by appellate decisions) have been less than clear in defining what must be shown in order for the jury to find the complainant was incapable of consenting, particularly in relation to the complainant's consumption of alcohol and drugs.[8] And the second of *Burke*'s premises — that the defendant have knowledge of the complainant's incapacity — has sometimes not been mentioned at all.[9] Despite this somewhat spotty record of adherence to *Burke*, for the reasons discussed immediately below, we think that *Burke* articulated the correct principles to govern in cases of rape where the complainant lacks the capacity to consent.

a. *Standard for finding of incapacity to consent.* First, where drugs or alcohol are concerned, it is important to emphasize that, as *Burke* makes clear, consumption or even intoxication by itself is not the issue. It is a matter of common knowledge that there are many levels of intoxication, and the fact of intoxication, by itself, does not necessarily mean that the individual in question is incapable of deciding whether to assent to a sexual encounter. The question instead is whether, as a result of the complainant's consumption of drugs, alcohol, or both, she was unable to give or refuse consent.[10]

The defendant argues that a complainant should only be considered incapable of giving or refusing consent when she "was intoxicated to the extent that . . . she was rendered unconscious or nearly so, and was temporarily incapable of making any decisions regarding sexual activity." He proposes to measure this level of impairment by looking to the complainant's capacity to communicate consent: the legal results of *Burke* should apply, he asserts, only where the complainant was "unable to

---

[8]See note 14, *infra*, for a brief survey of jury instructions in some of these cases.

[9]This point is discussed in part 2 (b), *infra*.

[10]We focus on drugs and alcohol because they are the relevant circumstances in this case. However, other factors may affect a complainant's capacity to consent, including, for example, sleep, unconsciousness, mental retardation, or head injury. See, e.g., *Commonwealth* v. *Moran*, 439 Mass. 482 (2003) (sleep); *Commonwealth* v. *Helfant*, 398 Mass. 214 (1986) (unconsciousness); *Commonwealth* v. *Simcock*, 31 Mass. App. Ct. 184 (1991) (head injury, question of mental disability). Whatever the factor or factors, the question is the same: Did these factors render the complainant incapable of giving or refusing consent to sexual intercourse?

communicate his [or] her lack of consent to the defendant (verbally, physically, or otherwise)."[11]

The defendant's characterization of the degree of incapacity required to trigger the *Burke* rules regarding proof of force and lack of consent is too restrictive. The law does not require that the complainant have been rendered "unconscious or nearly so" before she may be deemed past the point of consent.[12] We conclude that an instruction concerning capacity to consent should be given in any case where the evidence would support a finding that because of the consumption of drugs or alcohol or for some other reason (for example, sleep, unconsciousness, mental retardation, or helplessness), the complainant was so im-

---

[11]The defendant goes on to suggest that if there is any evidence that the complainant said no, there should be no jury instruction on incapacity, for "if he or she could have said no, he or she may have said yes." We disagree. As the Commonwealth points out, such a rule is inconsistent with the right that both the Commonwealth and the defendant have to present alternative theories when the evidence supports both views. See, e.g., *Commonwealth* v. *Tague*, 434 Mass. 510, 513-514 (2001) (affirming Commonwealth's right to proceed simultaneously on theories of joint venture and principal liability where conflicting evidence could support either theory).

[12]Justice Spina's separate opinion asserts that *Burke* does require unconsciousness, and that the *Burke* opinion used the phrases "wholly insensible," in a state of "utter stupefaction," and in a "state of unconsciousness" interchangeably. *Post* at 600. However, the term "unconscious" appears only once in *Burke*, not in reference to the facts of that case, but rather in a description of "the rule in England that unlawful and forcible connection with a woman in a state of unconsciousness at the time . . . is rape." *Burke*, 105 Mass. at 379. Although the opinion in *Burke* provides scant description of the victim in that case, we do not read it to require unconsciousness as a prerequisite to application of its analysis.

Several more recent cases following *Burke* have underscored that unconsciousness is not the touchstone for application of *Burke*'s premises. See, e.g., *Commonwealth* v. *Ascolillo*, 405 Mass. 456, 464 (1989) (judge properly gave instruction about incapacity to consent where victim testified she was forcibly raped while awake but under influence of alcohol and cocaine; defendant testified victim was "pretty high" and even may have overdosed); *Commonwealth* v. *Simcock*, 31 Mass. App. Ct. at 195 (incapacity instruction warranted where "there was at least some evidentiary basis for the suggestion that the victim might have been severely affected [by alcohol and prior head injury] so as to lack control" even though "the evidence fell short of suggesting the victim was in a state of stupefaction or unconsciousness"). See also *Commonwealth* v. *Urban*, *post* 608 (2008). We consider the jury instruction proposed in this opinion (see note 19, *infra*) to be a restatement of the *Burke* standard in more contemporary language, and one that reflects the way trial judges and the appellate courts have applied the *Burke* standard over the years in deciding whether the evidence in a case presents a jury question of complainant incapacity.

paired as to be incapable of consenting to intercourse. If the jury find the Commonwealth has proved beyond a reasonable doubt the complainant's incapacity according to this standard, that finding satisfies the element of lack of consent, and as a corollary, the Commonwealth need only prove the amount of force necessary to accomplish intercourse.

We agree with the defendant, however, that the phrase "wholly insensible," used in *Burke* to describe the necessary level of incapacity, sounds archaic and confusing.[13] While both words may be used in modern discourse, the word "insensible" does not have a single, unambiguous meaning. The dictionary definition of the word lists at least six possibilities, including: "incapable or bereft of feeling or sensation[;] . . . deprived of consciousness[;] . . . deprived of . . . perception or ability to react[;] . . . *archaic*: lacking sense or intelligence: stupid, senseless, unreasoning[; and] unaware." Webster's Third New Int'l Dictionary 1168 (1993). Some of these descriptions might suggest to jurors a lower bar than the law actually requires; others might suggest a higher bar. Even though, as the judge correctly pointed out to the lawyers, the complete phrase "wholly insensible *so as to be incapable of consenting*" (emphasis added) identifies the appropriate inquiry, the ambiguity of the word "insensible" indicates the need for greater clarity. The formulation of the standard set forth above seeks to provide a more easily understood statement of what is required.[14]

b. *Defendant's knowledge of complainant's incapacity.* The second principle suggested by *Burke* is that where the evidence permits the Commonwealth to satisfy the element of lack of consent by proof of incapacity to consent, and therefore to satisfy the element of force simply by proof of penetration, there should

[13]The jurors' question to the judge in this case about the meaning of "wholly insensible" supports the view that the language may confuse more than it clarifies.

[14]This formulation — "because of the consumption of drugs or alcohol or for some other reason (for example, sleep, unconsciousness, mental retardation, or helplessness), the complainant was so impaired as to be incapable of consenting" — is intended to communicate to the jury that intoxication must be extreme before it can render a complainant incapable of consenting to intercourse, a point that has been less than clear in the instructions approved in some previous cases. See, e.g., *Commonwealth* v. *Moran*, 439 Mass. 482, 490 n.4 (2003) ("if by reason of sleep or intoxication or drunkardness [*sic*] or stupefication [*sic*] or unconsciousness or helplessness a person is incapable of

also be proof that the defendant knew or should have known of the complainant's incapacity to consent.[15] As noted, some of our cases have appeared to incorporate this principle. See, e.g., *Commonwealth* v. *Ascolillo,* 405 Mass. 456, 463 (1989) (judge included in incapacity instruction language "as he knows, wholly insensible so as to be unable [to] consent"); *Commonwealth* v. *Simcock,* 31 Mass. App. Ct. 184, 194 (1991) (instruction included "while knowing that she is utterly senseless so as to be unable [to] consent[]"). Cf. *Commonwealth* v. *Molle,* 56 Mass. App. Ct. 621, 626-627 (2002) (instruction improper for failure to include language "as he knows, wholly insensible so as to be unable to consent," although instruction also not warranted by evidence). Others have not. See, e.g., *Commonwealth* v. *Urban, post* 608, 612-613 (2008); *Commonwealth* v. *Moran,* 439 Mass. 482, 490 (2003).

There is good reason for requiring proof of the defendant's knowledge of incapacity. Massachusetts has not recognized the "defense" of mistake of fact in rape cases generally. See, e.g., *Commonwealth* v. *Lopez,* 433 Mass. 722, 727-729, 732 (2001). We do not do so today (see part 4, *infra*). But there is an important distinction between a rape case where the complainant is capable of giving or refusing consent and one in which she is not. As the *Lopez* court noted, a primary rationale for our rule in cases where the complainant has the capacity to consent is that the prosecution must prove that the defendant compelled the

consenting, an act of sexual intercourse . . . occurring with that person during such incapacity is without the valid consent of the incapacitated person"); *Commonwealth* v. *Ascolillo,* 405 Mass. at 462-463 ("[I]f there is some intervening restraint due to fear, intoxication, or other cause, there can be no consent. . . . [O]n the issue of consent, you may consider what state of intoxication, if any, [the victim] was in at the time of the incident alleged"); *Commonwealth* v. *Simcock,* 31 Mass. App. Ct. at 194 (essentially same). See also *Commonwealth* v. *Urban, supra* at 612-614 (discussing instruction similar to that used in *Commonwealth* v. *Moran, supra*).

[15]As set out in the text *supra, Burke* states this point in the following way: "[A] man's having carnal intercourse with a woman, without her consent, while she was, *as he knew,* wholly insensible so as to be incapable of consenting, and with such force as was necessary to accomplish this purpose, was rape" (emphasis supplied). *Burke,* 105 Mass. at 380-381. See *id.* at 376-377 ("[The] evidence . . . was sufficient to authorize the jury to find that Green, with the aid and assistance of this defendant, had carnal intercourse with [the victim], without her previous assent, and while she was, *as Green and the defendant both knew,* so drunk as to be utterly senseless and incapable of consenting, and with such force as was necessary to effect the purpose" [emphasis supplied]).

complainant to submit by the use of force or threat of bodily injury, and proof of that element of force "should negate any possible mistake as to consent" (citations omitted). *Id.* at 729. The *Lopez* court recognized, however, that in situations where the prosecution is not required to prove the use of force beyond that necessary for penetration, the possibility of a defendant's reasonable mistake about the complainant's consent could increase, creating the potential for injustice if no instruction concerning the defendant's honest and reasonable belief as to the complainant's consent were given.[16]

As *Burke* and its progeny reflect, a case in which the jury find that the complainant lacked the capacity to consent obviously represents one instance where the Commonwealth has no obligation to prove the use of force by the defendant beyond what is required for the act of penetration. See *Commonwealth* v. *Lopez*, 433 Mass. at 728-729. It thus makes sense to reemphasize the second principle suggested by *Burke*, and affirm that in such a case, the Commonwealth must prove that the defendant knew or reasonably should have known that the complainant's condition rendered her incapable of consenting to the sexual act.[17,18] A

---

[16]We said the following in *Commonwealth* v. *Lopez*, 433 Mass. 722, 728 (2001): "Other jurisdictions have held that a mistake of fact instruction is necessary to prevent injustice. New Jersey, for instance, does not require the force necessary for rape to be anything more than what is needed to accomplish penetration. . . . Thus, an instruction as to a defendant's honest and reasonable belief as to consent is available in New Jersey to mitigate the undesirable and unforeseen consequences that may flow from this construction." (Citation omitted.)

[17]The language concerning the defendant's knowledge in *Burke* may be read as suggesting that proof of actual, or subjective, knowledge of the complainant's condition is required. See *Burke*, 105 Mass. at 377, 380. However, it is more consistent with our recent cases discussing the mistake of fact "defense" to restate the principle as one requiring proof that the defendant knew or reasonably should have known of the complainant's incapacity to consent. See, e.g., *Commonwealth* v. *Cordeiro*, 401 Mass. 843, 849-851 (1988) (defendants received — although law did not require it — instruction on reasonable and good faith belief as to victim's consent; they objected to requirement of reasonableness, but court found no error). See also *Commonwealth* v. *Sherry*, 386 Mass. 682, 697 (1982) (rape defendants not entitled to instruction requiring jury to find defendants had "*actual knowledge*" of victim's lack of consent; defense of mistake of fact, although not recognized in Massachusetts, "requires that the accused act in good faith and with reasonableness" [emphasis in original]).

[18]Justice Spina expresses concern about a risk of unjust convictions for

proposed instruction that covers incapacity to consent, its effect on the elements of force and lack of consent, and the defendant's knowledge is set forth in the margin.[19]

c. *Incapacity instructions in this case.* The judge's instructions in this case failed to explain fully or with sufficient clarity the *Burke* principles that we have discussed above. The judge first summarized for the jury, correctly, that to prove the defendant guilty of rape, the Commonwealth was required to prove beyond a reasonable doubt the following elements: (1) the defendant engaged in sexual intercourse with the complainant; and (2) the sexual intercourse was accomplished by the defendant's compelling the complainant to submit (a) by force and (b) against her will. After defining the necessary proof of sexual intercourse, the judge turned to the element of force and its definition. It was in this context that the judge gave her first instruction about the complainant's possible incapacity to consent:

defendants who "could not possibly know the complainant was in an incapacitated state that prevented . . . consent." *Post* at 603-604. However, the requirement that the Commonwealth prove the defendant knew or reasonably should have known of the complainant's incapacity in order for a jury to convict on that basis provides protection from precisely that potential injustice.

[19]"In this case, there has been evidence that the complainant [had consumed alcohol; had consumed drugs; was unconscious; etc.]. If, because of the consumption of drugs or alcohol or for some other reason (for example, sleep, unconsciousness, mental retardation, or helplessness), a person is so impaired as to be incapable of consenting to sexual intercourse, then intercourse occurring during such incapacity is without that person's consent.

"If you find that the Commonwealth has proved beyond a reasonable doubt that the complainant was so impaired as to be incapable of consenting as I have just described, and if you further find that the Commonwealth has proved beyond a reasonable doubt that the defendant knew, or reasonably should have known, that the complainant's condition rendered her [or him] incapable of consenting, then the Commonwealth has proved the element of lack of consent, and, on the element of force, the Commonwealth need only prove that the defendant used the degree of force necessary to accomplish the sexual intercourse — that is, to effect penetration.

"However, if the Commonwealth has not proved that the complainant lacked the capacity to consent, or if the Commonwealth has not proved that the defendant knew or reasonably should have known of such incapacity, then in order to find the defendant guilty of rape, you must find that the Commonwealth has proved the elements of lack of consent and force as I have defined these elements for you earlier."

This instruction would, in cases where it is relevant, supplement the basic instruction on the elements of force and lack of consent.

"The crime of rape may be accomplished through the use of actual physical force or violence. Depending on the circumstances, however, the amount of force necessary may be only that which is needed to accomplish the act itself.

*"So, for example, if [the complainant's] condition as a result of being intoxicated or unconscious or asleep is such that she is wholly insensible so as to be incapable of consenting, then the Commonwealth need only prove that amount of force which was necessary to accomplish the . . . sexual intercourse"* (emphasis supplied).

The instructions went on to a further discussion of the use of force, and then reached the element of "against her will." The judge began with the Commonwealth's burden to prove beyond a reasonable doubt that the complainant did not consent to the sexual intercourse, and then stated:

"You may consider evidence of [the complainant's] state of mind at the time of the alleged incident on the issue of whether or not she consented to sexual intercourse. If a person submits because of fear, it is not consent. The person has to be free to exercise her will without restraint.

*"Now, there was some evidence presented in this case regarding the consumption of alcohol and marijuana and Klonopin by [the complainant] before the alleged incident occurred. You may take into consideration any evidence you find credible on the issue of her sobriety in assessing her ability to consent under such circumstances"* (emphasis supplied).

From this order of the instructions, it is not clear that the jury would understand that the "wholly insensible so as to be incapable of consenting" instruction, given in connection with the element of force, also applied to the element of lack of consent. In other words, the jury may not have appreciated that for the Commonwealth to meet its burden of proof on the complainant's lack of consent by establishing that she was incapable of consenting, the Commonwealth must show not simply that she lacked sobriety or was intoxicated, but that as a result of the alcohol and drugs she consumed, the complainant's physical or mental condition

was so impaired that she could not consent. Moreover, quite apart from the question of order, the jury indicated their confusion about the meaning of the specific phrase "wholly insensible" by asking the judge for a further explanation of the meaning of the phrase, but the judge ultimately decided not to provide clarification.

The record in this case reveals that with the fact of intercourse conceded, lack of consent was the principal if not only contested issue before the jury. The evidence presented conflicting views about whether the complainant was capable of consenting, and if she was capable, whether she did so. We cannot say that the errors in the charge were not prejudicial. *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). The defendant is entitled to a new trial.

The judge's instructions also failed to address the issue of the defendant's awareness of the complainant's possible incapacity. Although the *Burke* case impliedly suggests the need for such an instruction, *Burke* did not require it, and neither this court nor the Appeals Court has ever done so in the 137 years since *Burke* was decided. In the circumstances, we treat "[t]he entitlement to a jury instruction [on the issue of the defendant's knowledge about incapacity] . . . [as] an exercise of our power of superintendence 'to regulate the presentation of evidence in court proceedings,' . . . not a new constitutional rule." *Commonwealth* v. *Dagley*, 442 Mass. 713, 720 (2004), quoting *Commonwealth* v. *DiGiambattista*, 442 Mass. 423, 444-445 (2004). Accordingly, we will not give the new rule retroactive effect, but will apply it solely to trials occurring after the issuance of the rescript in this case. See *Commonwealth* v. *Dagley*, *supra* at 720-721, and cases cited. In this case, a new trial is required for other reasons. In any retrial, if the complainant's capacity to consent is again at issue, the defendant will be entitled to an instruction that, in order to sustain a conviction on a theory of incapacity to consent, the Commonwealth must prove that the defendant knew or reasonably should have known that the complainant's condition rendered her incapable of consenting.

3. *Sufficiency of evidence concerning incapacity.* The defendant argues strenuously on appeal that the evidence at trial was not sufficient to justify an instruction about the complain-

ant's possible incapacity to consent. He did not raise this point at trial. After reviewing the record, we conclude that there was no error.

An incapacity instruction was warranted on the evidence presented in this case. Several witnesses who observed the complainant shortly before the alleged rape took place testified that she exhibited signs of extreme intoxication, including falling down, behaving combatively, driving into a fence and the side of a house, and "pass[ing] out" for a period of time. The complainant herself testified to significant gaps in her memory. Furthermore, the complainant's blood alcohol level several hours after the alleged offense tested at 0.14 per cent, and there was expert testimony that, according to a retrograde analysis, her blood alcohol level at the time of the incident would have been between 0.176 and 0.240 per cent, a level likely to produce disorientation, loss of judgment, impaired perception, lethargy, imbalance, slurred speech, impaired comprehension, and confusion. Although the defendant points to countervailing evidence that the complainant was able to walk steadily, talk comprehensibly, dial the telephone, and make decisions regarding having her vehicle towed, the weight of such evidence was for the jury to determine. If any reasonable view of the evidence supports an instruction, it should be given. See *Commonwealth* v. *Colon*, 449 Mass. 207, 220 (2007). Regardless of the existence of countervailing evidence, an intoxication instruction was warranted because there was evidence from which reasonable jurors could conclude that the complainant was impaired to the point of being incapable of consenting to the sexual encounter.[20] Contrast *Commonwealth* v. *Molle*, 56 Mass. App. Ct. 621, 626 (2002) (intoxication instruction not warranted where victim had consumed alcohol but testified that she did not feel under its influence).

4. *Mistake of fact instruction.* The judge refused the defendant's request to instruct the jury that a reasonable and good

---

[20]There was also evidence, of course, from which the jury might have found that the complainant was capable of consenting and did consent, or that she was capable of consenting and refused to consent — findings that could have led, respectively, to a verdict of not guilty, or a verdict of guilty on the basis of traditional proof of force and lack of consent. However, because one reasonable view of the evidence could support a finding of the complainant's incapacity, it was appropriate to instruct the jury that they might convict on that theory as well.

faith mistake of fact as to the complainant's consent is a defense to rape.[21] The defendant challenges the judge's ruling on appeal.

The defendant appears to argue that quite apart from the issue of incapacity to consent, the court should reconsider its decision in *Commonwealth* v. *Lopez*, 433 Mass. 722, 727-728 (2001), in which we held that "[b]ecause G. L. c. 265, § 22, does not require proof of a defendant's knowledge of the victim's lack of consent or intent to engage in nonconsensual intercourse as a material element of the offense, . . . [a]ny perception (reasonable, honest, or otherwise) of the defendant as to the victim's consent is . . . not relevant to a rape prosecution." We decline to accept the defendant's invitation to overrule *Commonwealth* v. *Lopez, supra.* Having addressed in this case the special circumstances presented by a complainant who may have been incapable of consent, we are not prepared to adopt a rule that would recognize more generally a mistake of fact defense.

Accordingly, the judgment is reversed, the verdict set aside, and the case remanded to the Superior Court for a new trial.[22]

*So ordered.*

[21]Specifically, the defendant requested the following language: "Furthermore, it is the Commonwealth's burden to prove beyond all reasonable doubt that the defendant would know that the complainant did not consent to the acts of sexual intercourse alleged. The Commonwealth must prove beyond all reasonable doubt defendant intended to force [the complainant] to engage in sexual intercourse against her will. If, from all the evidence, you have a reasonable doubt whether the defendant reasonably and in good faith, believed that [the complainant] voluntarily consented to engage in sexual intercourse, you must give the defendant the benefit of that reasonable doubt, and acquit him of this charge." The last sentence of this instruction is drawn from an instruction given by the trial judge in *Commonwealth* v. *Cordeiro*, 401 Mass. 843, 849-850 (1988), and we noted in that case that the language was more generous to the defendant than the law required. *Id.* at 850-851 & n.11.

[22]The defendant argued before the Appeals Court that the prosecutor had overstepped permissible bounds of argument by emphasizing in her closing to the jury that the defendant was a police officer on duty at the time of the alleged rape, and owed a duty to protect the public, including the complainant. He does not repeat the argument here. While the Appeals Court did not find any impropriety in the argument, we believe that references to the defendant's status and particularly his obligation to protect are better left unsaid, because they might be understood as suggesting that the defendant should be held to a higher standard than another defendant who was not a police officer.

SPINA, J. (concurring in part and dissenting in part, with whom Cowin, J., joins). I agree that a new trial is required, but I disagree with the reasoning of the court.

1. *The evidence does not warrant an instruction under* Commonwealth *v.* Burke. Although the defendant objected to the judge's instruction on the question whether the complainant was "wholly insensible so as to be incapable of consenting," his objection went to the judge's failure to instruct on the complainant's "incapacity" in the terms he had requested. In particular, the defendant requested an "incapacity" instruction that would have required the Commonwealth to prove that the complainant was unconscious. He now argues for the first time that the "wholly insensible" instruction should not have been given because the evidence does not support a finding that the complainant was unconscious, or nearly so. We review a challenge to a jury instruction on a ground not specifically brought to the attention of the trial judge under the standard of a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Chapman*, 433 Mass. 481, 489 (2001).

I disagree with the court and believe that because the evidence does not support a finding that the complainant was "wholly insensible so as to be incapable of consenting," see *Commonwealth* v. *Burke*, 105 Mass. 376, 380 (1870), a *Burke* instruction should not have been given. In that case, the court held the Commonwealth may prove lack of consent if it shows the complainant was "wholly insensible," in a state of "utter stupefaction," or in a "state of unconsciousness," terms the court used interchangeably, "so as to be incapable of consenting." The evidence here fails to establish that the complainant had the requisite state of mind (or absence thereof) as exemplified by her testimony that she remembered telling the defendant at least three times that she did not want to have intercourse, and that she tried to kick him and she tried to push him off her. See *Commonwealth* v. *Goldenberg*, 338 Mass. 377, 383, cert. denied, 359 U.S. 1001 (1959) (where complainant had been drugged by defendant but was sensible of what he was doing to her yet made no objection and offered no resistance, court said, "This is not a case where [the complainant] is incapable of consent by reason of stupefaction, unconsciousness or helplessness," citing

*Commonwealth* v. *Burke, supra*). Contrast *Commonwealth* v. *Moran*, 439 Mass. 482, 491 (2003) (*Burke* instruction warranted where intoxicated complainant was asleep each time defendant started performing sexual acts on her, and after waking she felt drugged and unable to act).

The complainant here also testified that she remembered sitting in the front seat of the police car before being raped, and pushing buttons that activated the siren. She recalled that the defendant was angry, and that he told her to sit in the rear seat of the police car and not touch anything. She remembered that the defendant had removed his duty belt, climbed into the rear seat of the police car, and removed her clothing. Within thirty minutes, the complainant telephoned police and reported she had been raped by a Methuen police officer. She was taken to a hospital less than one hour later, where a nurse recorded her condition as "agitated," "upset," and "distraught," but "alert and oriented." This evidence is insufficient to meet the standard of showing the complainant was "wholly insensible," or in a state of "utter stupefaction," or a "state of unconsciousness" such that she was incapable of consenting. See *Commonwealth* v. *Burke, supra* at 380-381. There is no evidence that the complainant had no capacity to consent.

Of course, an instruction is proper if it is supported by any hypothesis of the evidence. See *Commonwealth* v. *Ascolillo*, 405 Mass. 456, 464 (1989). However, the evidence of the complainant's intoxication on which the judge presumably relied in deciding to give the *Burke* instruction also does not support a finding that she was incapable of consenting. An expert opined that, based on a retrograde analysis of the complainant's blood alcohol in a sample taken at the hospital approximately one and one-half hours after intercourse, and taking into consideration her body size and her lack of food consumption, her blood alcohol level at the time of the intercourse would have been between 0.176 and 0.240. The expert further opined that such an elevated blood alcohol level was likely to produce disorientation, loss of judgment, impaired perception, lethargy, imbalance, slurred speech, impaired comprehension, and confusion. Admittedly, the evidence shows she was highly intoxicated, but this is not enough. The evidence must show that the complainant's "state of insensibility" was such that she "had *no power* over

her will" (emphasis added). *Commonwealth* v. *Burke, supra* at 379. In effect, there must be a showing of total incapacity to consent. Here, the evidence of intoxication does not support a finding beyond a reasonable doubt that this complainant had "no power" to consent. I would hold that the Commonwealth failed to produce evidence that could support a finding beyond a reasonable doubt that the complainant was totally incapable of consenting, and therefore a *Burke* instruction should not have been given.

2. *The instruction created a substantial risk of a miscarriage of justice.* Although I believe it was error to give a *Burke* instruction, a proper *Burke* instruction would not have created a substantial risk of a miscarriage of justice. The jury were instructed, conformably with *Commonwealth* v. *Burke, supra,* that if the Commonwealth proved the complainant were "wholly insensible as to be incapable of consenting," then the amount of force required to commit rape was that necessary to accomplish sexual intercourse. I disagree that this instruction is confusing, or, as the defendant contends, that it lowers the Commonwealth's burden. Because the Commonwealth fell so far short of meeting its burden, the jury probably did not conclude the defendant only used the amount of force needed to accomplish intercourse.

The problem comes in a later portion of the instructions, as the court points out, *ante* at 595-597, part 2 (c), where the judge addressed the separate element of the complainant's lack of consent. The judge instructed the jury that submission because of fear is not consent, and added, "The person has to be free to exercise her will without restraint." She then instructed that, as to the evidence of the complainant's consumption of drugs and alcohol, "You may take into consideration any evidence you find credible on the issue of her sobriety in assessing her ability to consent under such circumstances." This instruction made no reference to the instruction on force, nor did it inform the jury that their consideration of the evidence of the complainant's sobriety should be focused on the question whether the Commonwealth proved beyond a reasonable doubt that she had been rendered "wholly insensible as to be incapable of consenting" such that the amount of force required was merely that needed to perform intercourse. Instead, the instruction permitted the

jury to find that intoxication, like fear, could support a finding of lack of consent if the Commonwealth proved the complainant's free will was impaired or restrained. I agree with the defendant that this instruction lowered the Commonwealth's burden by permitting a finding of lack of consent based on intoxication alone. This created a substantial risk of a miscarriage of justice and a new trial is required. Although this is one of the reasons cited by the court for reversing the conviction, I would reverse the conviction for this reason alone.

The court reverses the conviction in part because the judge instructed the jury, in response to their question, that the words "wholly insensible," taken together, should be given their common meaning. I believe that instruction was correct. Although it would have been preferable to repeat the entire phrase "wholly insensible so as to be incapable of consent" and thereby provide context for the words "wholly insensible," the judge answered the question asked by the jury.

3. *The new standard under* Commonwealth *v.* Burke. Today the court holds that the *Burke* standard is not limited to cases where a complainant is "unconscious," or nearly so, but includes cases where "the complainant's physical or mental condition was so impaired that she could not consent." *Ante* at 597. The court also inserts a model instruction, *ante* at 595 n.19, that reflects the court's opinion. However, I would insert the word "totally" before the phrase "incapable of consenting" in the model instruction. The devil lies in the details that render use of the model instruction appropriate. I already have stated my reasons why a *Burke* instruction was not appropriate in this case, and I will now discuss my reasons for disagreeing with the use of the model instruction in cases where the evidence suggests a condition less than unconsciousness or total incapacity to consent.

I believe that this case significantly changes the law of rape. Hereafter, a person who has sexual intercourse with one who is highly intoxicated but capable of interacting with others, a common occurrence, does so at great risk that when the effects of the alcohol wear off, the other person will claim that intercourse occurred without consent. Moreover, where the standard had been virtual unconsciousness, a defendant must have known there was no consent. Under the standard announced today, a

defendant could not possibly know the complainant was in an incapacitated state that prevented giving or withholding consent. Indeed, in this case, the Commonwealth relied on scientific analysis of the complainant's blood alcohol level and expert testimony to show a state of mind that the court holds warranted a *Burke* instruction. If expert testimony is needed, a defendant could not possibly know, based on his or her untrained observations of the complainant's sobriety alone, that the complainant was incapable of consent.

The court makes clear that, as provocative as the evidence shows this complainant had been, the evidence also shows that her level of intoxication warrants a *Burke* instruction. This places a defendant who is as highly intoxicated as the complainant in the anomalous and unfair position of defending against evidence of a complainant's mental state, admitted in evidence to show the complainant's incapacity to consent to intercourse, an element of the Commonwealth's case, but unable to present the same type of evidence on the question of his or her own intent to have intercourse. See *Commonwealth* v. *Troy*, 405 Mass. 253, 262-263 (1989) (intoxication has no mitigating effect on general intent to have intercourse or other elements of rape charge). Where the defendant's intent to have intercourse and the complainant's intent not to have intercourse are both elements of the Commonwealth's proof, and where the intent to have intercourse either was mutual or it was not, the effects of intoxication should apply equally to the respective intent of each party to the intercourse. This should be so because the question of fact to be determined as to each is qualitatively the same: whether intercourse was intended. After today, however, the concept of diminished capacity and its relative, specific intent, see *Commonwealth* v. *Henson*, 394 Mass. 584, 592 (1985), will apply to the mental state of a rape complainant, but not to the mental state of a defendant.

When the standard was unconsciousness, it was probably open to both parties to show total incapacity to form the requisite intent. Now, although a defendant may be able to show through evidence of his own unconsciousness a total incapacity to form the requisite general intent to have intercourse, the Commonwealth no longer needs to show unconsciousness on the part of the complainant. Its burden as to the complainant's capacity to

intend to have intercourse is henceforth reduced. The direction of this imbalance will be determined exclusively by the prosecutor, as can be seen from the following illustrations.

If this complainant had had intercourse with a willing and eager child under the age of sixteen years, in all likelihood she would have been charged with statutory rape, and evidence of her sobriety would not have been admitted because it would not have been relevant to her intent to have sexual intercourse. *Commonwealth* v. *Troy*, *supra*. However, if the prosecutor decided to charge the child with rape, the degree of the complainant's sobriety short of unconsciousness now has significance and hereafter will be admissible on the issue of consent. Turning closer to the facts of this case, if there had been no intercourse here and the complainant had been charged with indecent assault and battery for having grabbed Blache's crotch, evidence of her sobriety would not have been admissible. It is highly unlikely that the court in *Commonwealth* v. *Burke*, 105 Mass. 376 (1870), understood that its holding would permit evidence of sobriety short of unconsciousness on the issue of the complainant's intent to have intercourse.

The decision in this case makes the complainant's capacity to consent a highly disputable issue, something akin to diminished capacity, evidenced by debilitating intoxication, to form a specific intent to have intercourse. See, e.g., *Commonwealth* v. *James*, 424 Mass. 770, 788-789 (1997). By accepting what was essentially the Commonwealth's argument in this case, evidence of intoxication now may be offered to show that the complainant (but not the defendant) lacked the capacity to intend intercourse. Essentially, the Commonwealth may now show the complainant lacked specific intent to have intercourse. The defendant's intent remains tethered to the law concerning general intent, although the focus of the case for the defendant is the mutuality of intent to have intercourse. This case changes the focus from what was once an easily ascertainable objective fact, i.e., unconsciousness, to a fact that, as was seen in this case, requires expert testimony. It also may well expose complainants in some cases to disclosure of medical and mental health records, and even examination by a physician, including, but not limited to, a psychiatrist or a psychologist. This was not necessary under our prior law.

The court suggests that case law after *Burke* was "less than clear in defining what must be shown in order for a jury to find the complainant was incapable of consenting, particularly in relation to the complainant's consumption of alcohol and drugs." *Ante* at 589-590. Curiously, the court relies on such cases for support in its ultimate holding.

In one such case, *Commonwealth* v. *Ascolillo*, 405 Mass. 456 (1989), there was no analysis to suggest that evidence of a mental condition less than "wholly insensible so as to be incapable of consenting" was relevant. In that case the defendant apparently attempted to recast the victim's clear resistance to his attempts at intercourse and her assertions that she did not want to have intercourse with him as a "seizure" from a "cocaine overdose." *Id.* at 464. He claimed that thereafter she consented to intercourse. *Id.* at 458. The *Ascolillo* court accepted the defendant's diagnosis as evidence warranting a *Burke* instruction, and compared her condition to those of the victims in *Commonwealth* v. *Helfant*, 398 Mass. 214, 217, 221 (1986) (victim injected with Valium and rendered unconscious), and *Commonwealth* v. *Burke, supra* (victim in state of "utter stupefaction" caused by drunkenness), and distinguished her condition from that of the complainant in *Commonwealth* v. *Goldenberg*, 338 Mass. 377, 383 (1959) (victim drugged by defendant, but was sensible of what he was doing to her). See *Commonwealth* v. *Ascolillo, supra* at 464.

*Commonwealth* v. *Simcock*, 31 Mass. App. Ct. 184 (1991), another case that figures prominently in the analysis of today's opinion, is the first case to hold a *Burke* instruction may be given where "the evidence fell short of suggesting the victim was in a state of stupefaction or unconsciousness." *Id.* at 195. That case, however, is based on a faulty reading of *Commonwealth* v. *Ascolillo, supra*. The *Simcock* court glaringly failed to mention that the *Ascolillo* court cited and relied on the evidence that the victim had suffered what was described as a "seizure from cocaine overdose," which the court determined warranted the giving of a *Burke* instruction. *Id.* at 464.

The standard of "wholly insensible," "utter stupefaction," and "unconsciousness," by which a complainant has heretofore been deemed to be incapable of consenting to intercourse, is a

fair and workable standard from which the court today departs in favor of a standard that needlessly complicates certain rape cases, and has great potential to produce unfair results for defendants and unwanted intrusions into the private affairs of complainants. In the future we can expect the Commonwealth to try rape cases, as here, like drunk driving cases. I respectfully dissent.