Following a jury-waived trial in the Superior Court, the defendant was convicted of indecent assault and battery on a person with an intellectual disability. See G. L. c. 265, § 13F. On appeal, he argues that the indictment should have been dismissed under Mass.R.Crim.P. 13, as appearing in 442 Mass. 1516 (2004), and under Commonwealth v. McCarthy, 385 Mass. 160 (1982), because evidence presented to the grand jury did not amount to probable cause. He also claims that the Commonwealth's evidence was insufficient to support the conviction. We affirm.
1. Motion to dismiss. The defendant moved to dismiss the indictment before trial, arguing that the Commonwealth failed to present to the grand jury sufficient evidence that the victim, whom we shall call Kathy, (1) did not consent to the conduct with which he was charged, or (2) lacked the capacity to consent. Considering only whether "the grand jury [heard] sufficient evidence to establish the identity of the accused ... and probable cause to arrest him" for the crime charged, McCarthy, supra at 163, we conclude that the motion was properly denied.
The evidence presented to the grand jury established that Kathy has a diagnosis of mild to moderate cognitive impairment and Down Syndrome. She was living in a group home in Waltham on March 9, 2011, when the defendant, who was employed as a van driver, picked her up and drove her to a day program she regularly attended. The defendant knew Kathy and had transported her to the program on previous occasions. When the van stopped at a traffic light, the defendant put his hand down Kathy's shirt. Kathy began to shake, raised her hands, and shook her arms. The defendant then put his hand down between Kathy's legs. Kathy continued to shake and had a stunned expression on her face.
Kathy did not testify before the grand jury. The conduct described above was witnessed by Janet Bourgeois, who was driving to work and had stopped at the same traffic light in front of the defendant's van. Bourgeois was employed as a front end supervisor at a pharmacy. She recognized the defendant because he often came into the pharmacy to pick up prescriptions. She also recognized Kathy as a resident of the group home, but she did not know Kathy's name. Upon arriving at the pharmacy, Bourgeois reported her observations to her supervisor, who then called the main office of the group home. Kathy did not attend her program that day. Instead, she was brought to the hospital. Kathy had fresh marks on the left side of her chest and appeared upset and angry.
State police Sergeant Timothy Brown testified that he interviewed the defendant on the following day. The interview was both video and audio recorded, and a copy of the recording was introduced as a grand jury exhibit.[2] Sergeant Brown testified that the defendant admitted driving Kathy on the morning of March 9, 2011, from the group home to her day program. The defendant also admitted that he was aware of Kathy's disability. More specifically, the defendant described Kathy as "retarded." Initially, the defendant told Sergeant Brown that he did not recall touching Kathy. Later, however, he admitted that Kathy had a hole in her sock and he stuck his finger into the hole. He further stated that he sometimes helps Kathy with her coat. Upon learning of the allegations against him, the defendant stated that Kathy was mistaken or lying, that she would repeat anything, and that she doesn't remember anything from one minute to the next. According to Sergeant Brown, the defendant also posed the rhetorical question, "why would I do that, she doesn't have any breasts."[3]
The evidence provided the grand jury with ample probable cause to believe that Kathy did not consent to the defendant's conduct. It also was sufficient to establish probable cause to believe that Kathy lacked the capacity to consent and that the defendant was aware of her possible incapacity due to her disability. See Commonwealth v. Blache, 450 Mass. 583, 594 (2008) (Commonwealth may prove lack of consent with proof that victim lacked capacity to consent, but only when defendant's knowledge of such incapacity is shown).
2. Motion for a required finding of not guilty. The defendant contends that the evidence presented at trial was not sufficient to prove the element of lack of consent beyond a reasonable doubt. We disagree. Although Kathy did not testify, the jury properly could have inferred from the evidence, which mirrored that presented to the grand jury, that Kathy did not consent to the defendant's conduct and that she was incapable of giving consent.[4] The Commonwealth presented additional evidence at trial regarding Kathy's developmental disability. That evidence established that Kathy, who was fifty-one years old at the time of the incident, had been living in supervised facilities since at least 1984. By 2011, Kathy's life skills had declined to the point where she needed twenty-four hour supervision and assistance with most daily activities. As a result of this decline, she was moved to the group home in Waltham, where staff assists her with dressing, hygiene, medical appointments, and the like. Kathy's residence is alarmed so as to prevent her from wandering, and she is not permitted to be in the community unsupervised. The Commonwealth also introduced a redacted version of the defendant's recorded interview, in which he acknowledges Kathy's disability.
Viewing the evidence in the light most favorable to the Commonwealth, Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), a rational trier of fact could conclude that Kathy did not consent, based on testimony describing her immediate reaction to the defendant touching her and her prolonged distress over the incident. And, based on the testimony regarding the level of care and supervision Kathy requires on a daily basis, the jury also reasonably could have inferred that Kathy's "physical or mental condition was so impaired [as a result of her disability] that she could not consent."[5] Commonwealth v. Blache, supra at 596-597.
Judgment affirmed.

Presumably, the grand jurors viewed the recording of the interview. We have been provided with a copy of the exhibit. Because Sergeant Brown's testimony regarding the contents of the interview is consistent with what appears on the recording, it suffices to rely on his testimony for purposes of determining whether the Commonwealth has met its burden.

There was evidence that Kathy had undergone a mastectomy.

Bourgeois testified that she saw the defendant touch Kathy and described Kathy's reaction. Other witnesses described Kathy's distress and the new injury to her chest.

Contrary to the defendant's assertion, the Commonwealth was not required to present expert testimony to prove Kathy's incapacity to consent. The jury could have reasonably inferred incapacity based on evidence of Kathy's developmental limitations.